[No. D045112. Fourth Dist., Div. One. Feb. 16, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
CARREA CHRISTOPHER, JR., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, Rules 976(b) and 976.1, this opinion is certified for partial publication. The portions ordered published follow.

## COUNSEL

Gregory Cilli, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NARES, J.**—Carrea Christopher, Jr.[1] (Christopher) appeals a judgment of conviction after a jury found him guilty of second degree burglary (Pen. Code,[2] § 459—count 1); petty theft with a prior conviction (§ 484—count 2); and resisting, delaying or obstructing a peace officer (§ 148, subd. (a)(1) (hereafter section 148(a)(1))—count 3), a misdemeanor. Prior to trial, the court had received Christopher's admission of allegations in the information that he had suffered a prior burglary conviction in June 2001 and had a prison prior (§§ 667.5, subd. (b) & 668).

The court sentenced Christopher to the middle term of two years for the burglary conviction (count 1) and to a consecutive one-year term for the prison prior, resulting in an aggregate term of three years in state prison. The court imposed a concurrent middle term of two years for the petty theft conviction (count 2), but stayed that sentence under section 654. As to count 3 (§ 148(a)(1)), the court imposed a concurrent sentence of 162 days, which Christopher had already served.

In his appellant's opening brief, Christopher contends (1) his conviction of resisting, obstructing or delaying a peace officer in violation of section 148(a)(1) (count 3) should be reversed because the court prejudicially erred by instructing the jury with an "impermissible mandatory conclusive presumption" that giving a false name to a peace officer constitutes "willfully resisting, obstructing or delaying" a peace officer; and (2) his conviction of

---

[1] Christopher is apparently also known as Carre Christopher; Christopher Carre; Christopher Carrea; and Christopher Carrea, Jr.

[2] All further statutory references are to the Penal Code.

that offense should also be reversed because there is insufficient evidence to show he willfully resisted, delayed or obstructed the police in the performance of their duties. In his appellant's supplemental brief,[3] Christopher also maintains (3) that he should not have been convicted, and the court should not have instructed the jury that it could convict him, of violating section 148(a)(1) because the only alleged conduct by Christopher offered by the prosecution on that charge—giving a false name to a peace officer—would support a conviction under section 148.9, subdivision (a) (hereafter section 148.9(a)) (discussed, *post*), and thus the language in 148(a)(1) itself barred his conviction of resisting, obstructing or delaying a peace officer.

\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

We conclude that (1) Christopher forfeited his claim of instructional error; (2) substantial evidence supports the jury's finding that he resisted, delayed or obstructed a peace officer by falsely identifying himself as Donald Christopher Brown; and (3) his claim that his conviction of violating section 148(a)(1) is barred on the ground that "other punishment" was prescribed by section 148.9(a), is unavailing.\* Accordingly, we affirm the judgment.

## FACTUAL BACKGROUND

### A. *The People's Case*

In June 2004 Carmelita Carter, a loss prevention employee at a J.C. Penney's department store in San Diego, was monitoring the sales floor with closed-circuit television cameras in the security office for the purpose of preventing shoplifting. Carter observed Christopher enter the men's department carrying a tote bag and a backpack. When she observed Christopher place the tote bag behind a shelf, she became suspicious and notified her supervisor, Joseph Hawley, who was also in the security office.

While Hawley was walking to the men's department, Carter saw Christopher select three pairs of jeans and two shirts, wrap the jeans in the shirts, and place the clothing on a shelf. Christopher then picked out two more shirts, grabbed the previously wrapped clothing, and went into the men's fitting room area wearing his backpack. Carter observed Christopher

[3] On November 28, 2005, this court granted Christopher leave to file his appellant's supplemental brief.

\*See footnote, *ante*, page 418.

leave the fitting rooms wearing his backpack, which was full and bulging out, but carrying no clothes in his hands.

Hawley testified he followed Christopher into the fitting room area and waited in a nearby stall for Christopher to leave. He saw Christopher leave. Hawley went into the stall that Christopher had been in and found no clothing, but found three clothing security ink tags that had been separated into a total of six pieces. Hawley then followed Christopher, who picked up his tote bag and left the store without stopping at a cash register.

Hawley and another store employee stopped Christopher outside the store. Hawley identified himself and asked Christopher to return to the store. After a brief struggle, Christopher complied and allowed Hawley and the other employee to escort him into the store. As they approached the security office, Christopher tried to run out the door, but he was stopped by Hawley and other employees. After Christopher was brought into the security office, the four shirts and three pairs of jeans, as well as a pair of pliers and a pair of wire cutters, were found in his backpack.

When the police arrived on the scene and took custody of Christopher in the security office, Christopher falsely identified himself to the officers as Donald Christopher Brown. Christopher told them he had no identification on his person. The police transported Christopher to police headquarters. During this time period, Christopher never identified himself by any name other than Donald Christopher Brown. At police headquarters, the police took Christopher's fingerprints, ran the prints through a computer system, and determined he went by the name of Christopher Carrea, Jr.[4]

B. *The Defense*

Upon direct examination by Christopher, who represented himself at trial, his fiancée Barbara Brown testified she saw Christopher put a couple of shirts, a couple of pairs of pants and some tools in his backpack before he left home on the morning of the incident. She stated he told her he was taking one of the shirts back because it was too small.

Defense investigators Alex Amigo and Gerry McMurray testified they went to the J.C. Penney's department store to investigate, but the store did not permit them to take pictures.

---

[4] See footnote 1, *ante.*

DISCUSSION

I

*INSTRUCTIONAL ERROR (COUNT 3)*

Christopher first contends his misdemeanor conviction of resisting, obstructing or delaying a peace officer (count 3) should be reversed because the court prejudicially erred by instructing the jury with an "impermissible mandatory conclusive presumption" that giving a false name to a peace officer constitutes "willfully resisting, obstructing or delaying" the officer within the meaning of section 148(a)(1).[5] Christopher maintains that by inserting the phrase "in that the defendant identified himself to the police officer by giving a false name" in the modified version of CALJIC No. 16.102 (discussed, *post*) it gave to the jury, the court impermissibly lightened the prosecution's burden of proof by removing from the jury's consideration the essential statutory element of "willfully resist[ing], delay[ing], or obstruct[ing]" a peace officer set forth in section 148(a)(1) in the event the jury found that he had given a false name to the police. He further asserts that "[i]n effect, by instructing with modified CALJIC No. 16.102, the [court] told the jury not to consider any other evidence pertaining to the issue [of] whether [Christopher] 'willfully [resisted], delayed, or obstructed' the police officers from their duties."

The People argue that Christopher waived[6] his claim of instructional error by accepting the modified version of CALJIC No. 16.102 and that, in any event, the court properly instructed the jury. We conclude that Christopher forfeited his claim of instructional error.

---

[5] Section 148(a)(1) provides in full: "Every person who *willfully resists, delays, or obstructs any* public officer, *peace officer*, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, *in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed,* shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment." (Italics added.)

[6] In *In re S.B.* (2004) 32 Cal.4th 1287 [13 Cal.Rptr.3d 786, 90 P.3d 746], the Supreme Court recently explained that "[a]lthough the loss of the right to challenge a ruling on appeal because of the failure to object in the trial court is often referred to as a 'waiver,' *the correct legal term for the loss of a right based on failure to timely assert it is 'forfeiture,'* because a person who fails to preserve a claim forfeits that claim. In contrast, a waiver is the ' "intentional relinquishment or abandonment of a known right." ' " (*Id.* at p. 1293, fn. 2, quoting *People v. Simon* (2001) 25 Cal.4th 1082, 1097, fn. 9 [108 Cal.Rptr.2d 385, 25 P.3d 598] & *People v. Saunders* (1993) 5 Cal.4th 580, 590, fn. 6 [20 Cal.Rptr.2d 638, 853 P.2d 1093], italics added.)

### A. Background

#### 1. Modified CALJIC No. 16.102

The court instructed the jury, without objection by Christopher, on the elements of the crime of resisting, delaying or obstructing a peace officer (§ 148(a)(1)) by giving the following modified version of CALJIC No. 16.102: "[Christopher] is accused in count 3 of having violated [section 148(a)(1)]. [¶] Every person who willfully resists, delays or obstructs any peace officer in the performance of his duties, and who knows, or reasonably should know that the other person is a peace officer engaged in the performance of his duties, is guilty of a violation of [section 148(a)(1)]. [¶] In order to prove the crime charged in count 3, the prosecution must prove beyond a reasonable doubt each of the following elements: [¶] One, on or about June the 1st, 2004, [Christopher] willfully resisted, delayed or obstructed a peace officer *in that [he] identified himself to the police officer by giving a false name.* [¶] Two, at the time the peace officer was engaged in the performance of his duties. Three, [Christopher] knew, or reasonably should have known, that [(a)] the other person was a peace officer, and (b), was engaged in the performance of his duties." (Italics added.)

#### 2. The jury's note seeking clarification of the jury instruction

During deliberations, the jury sent a note to the court asking, "Does willfully giving a false name to a peace officer constitute 'obstruction' as defined by [section 148(a)(1)]?" The court provided to Christopher and the prosecutor the court's proposed response to the jury's question. The proposed response indicated that the question of whether Christopher's identifying himself by giving a false name constituted resisting, delaying or obstructing a peace officer within the meaning of section 148(a)(1) was a question for the jury to decide. Specifically, the court's proposed response stated: "It is for the jury to decide whether the prosecution has proven, beyond a reasonable doubt, that a peace officer was resisted, delayed, or obstructed by [Christopher's] identifying himself by *giving a false name.* If the jury so finds, then it is for the jury to decide whether the prosecution has proven, beyond a reasonable doubt, that [Christopher] acted 'willfully.' " (Italics added.)

#### 3. Christopher's acceptance of the court's written response to the jury's note

Christopher, who represented himself at trial, indicated to the court that he had read the jury's note and the court's proposed response to it, and stated he did not need more time. Both Christopher and the prosecutor reviewed the language of CALJIC No. 16.102.

Christopher initially expressed concern that the phrase "giving a false name" in the court's proposed response did not appear in either CALJIC No. 16.102 or section 148(a)(1). He stated, "I think we are rewriting the law by putting [in] this [phrase], 'giving a false name.' It's not part of [section 148(a)(1)]. I mean, I don't see 'giving a false name' in that subsection."

The court told Christopher that it put that language in the proposed response to the jury's question because the court was concerned the jury might convict him of a violation of section 148(a)(1) "based upon what you did with the security guards," and the court "wanted to differentiate as much as [it] possibly could that your conduct with the security guard[s] has nothing to do with count 3." The court stated that it wanted to "focus the jury in on the evidence that was there" and that "the only evidence that I could see that related to resisting or delaying or obstructing was you[r] *giving a false name*." (Italics added.)

The court also informed Christopher that "[t]he instruction in CALJIC [No. 16.102] and the statutory provision [did] not spell out what it is a defendant has to do to resist or delay or obstruct. Rather, it's anything that resists, delays or obstructs. It's the jury that decides [whether] the alleged conduct constitutes resisting, delaying or obstructing [a peace officer]. [¶] Therefore, if you had done something other than giving a false name, that would be in there rather than reference to giving a false name. But it's designed to let the jury know what the charge is so they don't convict you wrongfully of something else."

Christopher immediately indicated to the court that he would submit to the giving of the proposed response, stating simply, "Submit." The court sought to clarify the meaning of Christopher's response by asking him, "Are you giving up or do you understand what I just told you?" Christopher replied, "I understand what you say."

The court continued its inquiry and asked Christopher, "[A]s to the response to the question concerning obstruction, that portion of the Jury Note [No.] 1, as to my proposed response, you're submitting on the matter, Mr. Christopher?" Christopher replied, "Yes."

C. *Analysis*

Normally, a defendant forfeits the right to appeal alleged errors " 'by failing to make an appropriate objection in the trial court; however, an appellate court may review any instruction given even though no objection was made in the lower court if the substantial rights of the defendant are affected. [Citation.] The cases equate "substantial rights" with reversible

error, i.e., did the error result in a *miscarriage of justice*? [Citations.]' [Citation.]" (*People v. Rivera* (1984) 162 Cal.App.3d 141, 146 [207 Cal.Rptr. 756], italics added.) Furthermore, the California Supreme Court has held that a defendant's failure to object to a court's response to a jury request for clarification of a jury instruction should bar the defendant from challenging the response on appeal. (*People v. Medina* (1990) 51 Cal.3d 870, 901–902 [274 Cal.Rptr. 849, 799 P.2d 1282].)

Here, the record shows that the court instructed the jury with the modified version of CALJIC No. 16.102 (discussed, *ante*) without any objection by Christopher. The record also demonstrates that contrary to his claim on appeal, Christopher did not object to the court's proposed response to the jury's note requesting clarification of CALJIC No. 16.102. Although he initially challenged that response, Christopher discussed the matter with the court and then accepted the response by repeatedly informing the court that he would submit to the court's giving of the response to the jury. The record shows the court gave the response to the jury without any further objection by Christopher.

Because Christopher did not object when the court instructed the jury under the modified version of CALJIC No. 16.102, and he accepted the court's response to the jury's request for clarification of that instruction, we must conclude he has forfeited his claim of instructional error unless he has demonstrated a miscarriage of justice in this matter. (*People v. Rivera, supra*, 162 Cal.App.3d at p. 146; *People v. Medina, supra*, 51 Cal.3d at pp. 901–902.) For reasons we shall now discuss, we further conclude that Christopher has failed to demonstrate a miscarriage of justice.

Christopher implicitly contends he is the victim of a miscarriage of justice, and thus this court "should find preserved" his claim of instructional error because the court "committed reversible error by instructing the jury with a mandatory conclusive presumption." Specifically, as already noted, Christopher contends that by instructing the jury to decide whether he "willfully resisted, delayed, or obstructed a peace officer *in that [he] identified himself to the police officer by giving a false name*" (italics added), the court created an impermissible mandatory conclusive presumption by removing from the jury's consideration the essential element of willfully resisting, delaying, or obstructing a peace officer, as set forth in section 148(a)(1), in the event the jury found (as it implicitly did) that Christopher gave a false name to the police.

In support of his claim that the court's instruction removed an essential element of the charged offense (§ 148(a)(1)) from the jury's consideration and resulted in a miscarriage of justice, Christopher relies principally on *People v.*

*Quiroga* (1993) 16 Cal.App.4th 961 [20 Cal.Rptr.2d 446] (*Quiroga*). He asserts that "[a]ccording to *Quiroga*, a defendant who *gives a false name* after arrest but before booking[,] without evidence the *false name* delayed or obstructed the officers[,] cannot be held to violate section 148[(a)(1)]." (Italics added.) Christopher misconstrues both the facts and the holding in *Quiroga*.

In *Quiroga* the police arrested the defendant for possession of cocaine. (*Quiroga, supra,* 16 Cal.App.4th at pp. 964–965.) After his arrest, the defendant *refused to give his name* although a police officer repeatedly asked him for identification both in the patrol car while he was being transported to the police station and at the police station. (*Id.* at p. 965.) In refusing to give his name, the defendant repeatedly said, " 'Puddin' Tane, ask me again I'll tell you the same.' " (*Ibid.*) Upon his arrival at the jail, the defendant persisted in refusing to give his name during the booking process. (*Ibid.*) After about 30 minutes, one of the correctional officers recognized the defendant and provided his identity. (*Ibid.*)

On appeal, the defendant in *Quiroga* maintained there was no evidence to support his conviction of resisting a peace officer in violation of section 148(a). (*Quiroga, supra,* 16 Cal.App.4th at p. 965.) The Court of Appeal rejected that contention and affirmed his conviction under that subdivision, holding that although the defendant's refusal to give his name en route to the jail did not violate section 148(a), his "act of *refusing to disclose his identity*" during the booking interview at the jail "unquestionably served to resist, delay and obstruct the responsible peace officer in the discharge of his duties" and did violate that section. (*Quiroga, supra,* 16 Cal.App.4th at pp. 966, 972, italics added.)

*Quiroga* is distinguishable. Here, Christopher did not simply refuse to disclose his identity. The undisputed evidence shows that he, unlike the defendant in *Quiroga*, affirmatively and intentionally sought to mislead the law enforcement authorities in the discharge of their public duties by *falsely identifying himself* as Donald Christopher Brown from the time he was arrested at the department store until after he arrived at police headquarters. Such conduct may properly be characterized as a willful act of obstructing a peace officer in the discharge of his or her duties within the meaning of section 148(a)(1). The fact that the police succeeded in identifying Christopher through the use of fingerprints despite his willful attempt to obstruct the identification process following his arrest, both before and after his arrival at the police station, is immaterial.

Christopher acknowledges that his act of falsely identifying himself to the police following his arrest was a misdemeanor offense. Specifically, he states that his act of giving a false name to the police "would support a conviction

under section 148.9[(a)]." Section 148.9(a) provides that "[a]ny person who *falsely represents or identifies himself . . . as another person or as a fictitious person to any peace officer . . . upon a lawful detention or arrest of the person,* either to evade the process of the court, or to evade the proper identification of the person by the investigating officer is guilty of a misdemeanor."[7] (Italics added.) "The purpose of this law is to require the defendant to give 'sufficient information to allow law enforcement to locate the person if he or she does not appear in court.' [Citation.]" (*In re Kelly W.* (2002) 95 Cal.App.4th 468, 471 [115 Cal.Rptr.2d 536].)

 Sections 148(a)(1) and 148.9(a) are codified in the same chapter of the Penal Code,[8] and a violation of either statute is punishable as a misdemeanor. Christopher's postarrest act of willfully obstructing the police by misleadingly identifying himself with a false name, unlike the *Quiroga* defendant's lack of cooperation in refusing to identify himself, was a criminal offense under either statute. In light of the foregoing, we conclude that Christopher has not shown, and cannot demonstrate, he is the victim of a miscarriage of justice. Accordingly, we conclude he forfeited his claim of instructional error. (*People v. Rivera, supra,* 162 Cal.App.3d at p. 146.)

II

*SUFFICIENCY OF THE EVIDENCE*

Christopher next contends his conviction of violating section 148(a)(1) should be reversed because there was insufficient evidence to show he willfully resisted, delayed or obstructed the police in the performance of their duties. We reject this contention.

A. *Background*

At trial, San Diego Police Officer Brian Lucchesi testified that when he and his partner Officer Robert Stites arrived on the scene and took custody of Christopher in the security office of the department store, Christopher identified himself as Donald Christopher Brown. Christopher told the officers he

---

[7] Section 148.9(a) provides in full: "Any person who falsely represents or identifies himself or herself as another person or as a fictitious person to any peace officer listed in Section 830.1 or 830.2, or subdivision (a) of Section 830.33, upon a lawful detention or arrest of the person, either to evade the process of the court, or to evade the proper identification of the person by the investigating officer is guilty of a misdemeanor."

[8] Sections 148(a)(1) and 148.9(a) are both found in chapter 7 (Other Offenses Against Public Justice) of title 7 (Of Crimes Against Public Justice). (See 47 West's Ann. Pen. Code (1999 ed.) pp. 207, 304; *People v. Robertson* (1990) 223 Cal.App.3d 1277, 1282 [273 Cal.Rptr. 209], abrogated on another ground in *People v. Rathert* (2000) 24 Cal.4th 200, 206–208 [99 Cal.Rptr.2d 779, 6 P.3d 700].)

had no identification on his person. Officer Lucchesi stated that he was with Christopher in the security office for about half an hour and during this time period Christopher never identified himself by any name other than Donald Christopher Brown. The officer also testified that Christopher was transported from the security office to police headquarters.

Officer Stites also testified. When the prosecutor asked him whether he was "able at any time to identify [Christopher] by a name other than Donald Brown," Officer Stites replied, "Yes, sir." The following exchange took place between Officer Stites and the prosecutor:

"[Prosecutor.] How did you do that?

"[Officer Stites.] Once we left and finished our investigation at JC Penney's, we proceeded to headquarters to do the [identification]. Basically, we take fingerprints of an individual and run them through a computer system.

"[Prosecutor.] At that time what was identified as Donald Brown, did you determine his true name?

"[Officer Stites.] Yes.

"[Prosecutor.] What was that?

"[Officer Stites.] The name came back as Christopher Carrea, Jr."[9]

### B. *Standard of Review*

"In assessing a claim of insufficiency of the evidence, our 'task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*In re Kelly W., supra,* 95 Cal.App.4th at pp. 471–472, citing *People v. Rodriguez* (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618] & *People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) "In reviewing the evidence, we draw all reasonable inferences to support the judgment and resolve neither credibility issues nor evidentiary conflicts." (*In re Kelly W., supra,* 95 Cal.App.4th at p. 471, citing *People v. Hatch* (2000) 22 Cal.4th 260, 272 [92 Cal.Rptr.2d 80, 991 P.2d 165] & *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].)

---

[9] See footnote 1, *ante.*

C. *Analysis*

■ " 'The legal elements of a violation of section [148(a)(1)] are as follows: (1) the defendant willfully resisted, delayed, or *obstructed* a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties. [Citations.]' [Citation.] The offense is a general intent crime, proscribing only the particular act (resist, delay, obstruct) without reference to an intent to do a further act or achieve a future consequence. [Citation.]" (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329 [116 Cal.Rptr.2d 21], italics added.)

"Section 148 is most often applied to the physical acts of a defendant. [Citation.] For example, physical resistance, hiding, or running away from a police officer have been found to violate section 148. [Citations.] But section 148 'is not limited to nonverbal conduct involving flight or forcible interference with an officer's activities. No decision has interpreted the statute to apply only to physical acts, and the statutory language does not suggest such a limitation.' [Citation.]" (*In re Muhammed C., supra*, 95 Cal.App.4th at pp. 1329–1330.)

Here, Christopher does not dispute that the evidence was sufficient to show that when he falsely identified himself to the police officers as Donald Christopher Brown, the officers were engaged in the performance of their duties, and he knew they were peace officers engaged in the performance of their duties. Thus, his sufficiency of the evidence challenge in this matter is directed solely at the first essential element of the section 148(a)(1) offense charged as count 3, i.e., whether he willfully resisted, delayed, or obstructed a peace officer by giving the false name.

Christopher relies solely on *Quiroga, supra*, 16 Cal.App.4th 961, for the proposition that "[e]vidence of giving a false name to [a] police officer before booking cannot support a conviction for resisting an officer under [section 148(a)(1)]." He asserts that here, "the prosecution introduced no other evidence besides the giving of the false name during arrest to attempt to prove [he] resisted arrest."

As previously discussed, Christopher misconstrues both the facts and the holding in *Quiroga*, and thus his reliance on that case is unavailing. In *Quiroga*, the defendant did not give a false name to the police; he merely refused to identify himself. (*Quiroga, supra*, 16 Cal.App.4th at p. 965.)

■ Christopher has cited no California case authority, and we are aware of none, which holds that evidence showing the defendant falsely identified

himself to the police following a lawful arrest cannot support a conviction for willful obstruction of a peace officer in the discharge of, or attempt to discharge, his or her duties within the meaning of section 148(a)(1). For reasons already discussed, such an act may properly be characterized as a willful act of obstructing a peace officer in the discharge of his or her duties within the meaning of that subdivision.

■ Here, the prosecution presented substantial evidence showing that when the police arrested him and asked for his identification, Christopher gave them a false name, and he continued to use that false name from the time of his arrest until sometime after he arrived at police headquarters. Based on this evidence, we conclude that any jury could find beyond a reasonable doubt that Christopher sought to mislead the police by falsely identifying himself, and that he thereby willfully obstructed a peace officer in the discharge of, or attempt to discharge, his duties within the meaning of section 148(a)(1).

## III

### CONVICTION UNDER SECTION 148 NOT BARRED BY SECTION 148.9

In his appellant's supplemental brief, Christopher contends his conviction of resisting, delaying or obstructing a peace officer in violation of section 148(a)(1) was barred by the "when no other punishment is prescribed" provision set forth in that subdivision,[10] because "other punishment" for his act of giving a false name to the police following his arrest was provided by section 148.9(a). We reject this contention.

### A. *Applicable Principles of Statutory Interpretation*

■ "Familiar canons of statutory construction require that, in construing a statute, a court ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining that intent, we consider the statute read as a whole, harmonizing the various elements by considering each clause and section in the context of the overall statutory framework. [Citations.] We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences. [Citation.]" (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224] (*Jenkins*).)

---

[10] The text of section 148(a)(1) is set forth in footnote 5, *ante.*

B. *Analysis*

Christopher maintains that the phrase "when no other punishment is prescribed" in section 148(a)(1) has been judicially interpreted "to mean that only when *no other punishment is provided by statute* will conduct [that] amounts to willfully resisting, delaying, or obstructing a public officer be punishable under section 148." (Italics added.) In support of this contention, Christopher relies on *In re Bacon* (1966) 240 Cal.App.2d 34, 53 [49 Cal.Rptr. 322], disapproved on other grounds in *In re Brown* (1973) 9 Cal.3d 612, 624 [108 Cal.Rptr. 465, 510 P.2d 1017], in which the Court of Appeal interpreted the phrase "when no other punishment is prescribed" in section 148(a)(1) to mean that conduct amounting to willfully resisting, delaying, or obstructing a peace officer is punishable under section 148(a)(1) "only when no other punishment is provided by statute." Christopher also relies on *Quiroga, supra*, 16 Cal.App.4th at page 971, in which the Court of Appeal stated the phrase can be reasonably interpreted to mean " 'when no other provision in the Penal Code is applicable.' "

Citing *In re Bacon* and *Quiroga*, Christopher contends that because his act of giving a false name to the officers following his arrest in this matter was punishable under section 148.9(a), his conviction of violating section 148(a)(1) based on that same conduct was barred by the phrase "only when no other punishment is provided by statute" in that section (§ 148(a)(1)), and thus his conviction of count 3 should be reversed. We reject these contentions.

█ Section 148.9(a), as it applies to the facts of this case, provides: "Any person who falsely represents or identifies himself . . . as another person or as a fictitious person to any peace officer . . . upon a lawful detention or arrest of the person, *either to evade the process of the court, or to evade the proper identification of the person by the investigating officer* is guilty of a misdemeanor."[11] (Italics added.) A conviction for a violation of section 148.9(a) thus requires a showing that a lawfully arrested defendant not only falsely identified himself to a peace officer, but did so "to evade the process of the court, or to evade the proper identification of the person by the investigating officer . . . ." Unlike a conviction under section 148(a)(1), a conviction for a violation of section 148.9(a) does not explicitly require a showing that the defendant willfully resisted, delayed, or obstructed a peace officer.

█ We hold that where, as here, the alleged criminal conduct of the defendant consisted of giving a false identity to a police officer following the defendant's lawful arrest, the prosecution may charge the defendant either

---

[11] The full text of section 148.9(a) is set forth in footnote 7, *ante*.

(1) under section 148(a)(1), to punish the defendant for willfully resisting, delaying, or obstructing the officer in the discharge of, or attempt to discharge, any duty of his or her office or employment; or (2) under section 148.9(a), to punish the defendant for evading his or her proper identification by an investigating officer. Accordingly, we also conclude that the availability of punishment under section 148.9(a) for Christopher's act of falsely identifying himself to the police following his lawful arrest does not bar his conviction of a violation of section 148(a)(1).

Our conclusions find support in the text of section 148 read as a whole. In construing the meaning of the phrase "when no other punishment is prescribed" contained in section 148(a)(1), we are required to ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Jenkins, supra*, 10 Cal.4th at p. 246.) In determining that intent, we must consider section 148 "read as a whole, harmonizing the various elements by considering each clause and section in the context of the overall statutory framework." (*Jenkins, supra*, 10 Cal.4th at p. 246.)

Reading section 148 as a whole, we note that subdivisions (b) through (d) of that section prescribe other punishments for various other prohibited acts.[12]

---

[12] Section 148 provides in full: "(a)(1) Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment. [¶] (2) Except as provided by subdivision (d) of Section 653t, every person who knowingly and maliciously interrupts, disrupts, impedes, or otherwise interferes with the transmission of a communication over a public safety radio frequency shall be punished by a fine not exceeding one thousand dollars ($1,000), imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment. [¶] (b) *Every person who, during the commission of any offense described in subdivision (a), removes or takes any weapon, other than a firearm, from the person of, or immediate presence of, a* public officer or *peace officer shall be punished by imprisonment in a county jail not to exceed one year or in the state prison.* [¶] (c) *Every person who, during the commission of any offense described in subdivision (a), removes or takes a firearm from the person of, or immediate presence of, a* public officer or *peace officer shall be punished by imprisonment in the state prison.* [¶] (d) Except as provided in subdivision (c) and notwithstanding subdivision (a) of Section 489, *every person who removes or takes without intent to permanently deprive, or who attempts to remove or take a firearm from the person of, or immediate presence of, a* public officer or *peace officer, while the officer is engaged in the performance of his or her lawful duties, shall be punished by imprisonment in a county jail not to exceed one year or in the state prison.* [¶] In order to prove a violation of this subdivision, the prosecution shall establish that the defendant had the specific intent to remove or take the firearm by demonstrating that any of the following direct, but ineffectual, acts occurred: [¶] (1) The officer's holster strap was unfastened by the defendant. [¶] (2) The firearm was partially removed from the officer's holster by the defendant. [¶] (3) The firearm safety was released by the defendant. [¶] (4) An independent witness corroborates that the defendant stated that he or she intended to remove the firearm and the defendant actually touched the firearm. [¶] (5) An

For example, whereas a violation of section 148(a)(1) is punishable as a misdemeanor, a violation of subdivision (c) of that section, which prohibits the removal or taking of a firearm from the person of, or immediate presence of, a public officer or peace officer during the commission of an offense described in subdivision (a)(1), is punishable as a felony. Also, a violation of subdivision (b) of section 148, prohibiting the removal or taking of any other type of weapon under the same circumstances, is a "wobbler" that is punishable either as a misdemeanor or as a felony.

Thus, upon reading section 148 as a whole, it is apparent the Legislature intended that a person who commits one of the specific offenses listed in subdivisions (b) through (d) of section 148 is to be punished under the applicable subdivision that prohibits such offense, rather than under the more general subdivision (a)(1). In those cases, "other punishment" is prescribed for purposes of the phrase "when no other punishment is prescribed" set forth in section 148(a)(1).

Under this interpretation of the phrase in question, the misdemeanor punishment prescribed by section 148(a)(1) for a willful act of resisting, delaying, or obstructing a peace officer in the discharge of, or attempt to discharge, any duty of his or her office or employment applies "when no other punishment is prescribed" by the *other* subdivisions of section 148. Our interpretation of that phrase is consistent with the language contained in subdivision (e) of section 148, which states in part: "A person shall not be convicted of a violation of subdivision (a) in addition to a conviction of a violation of subdivision (b), (c), or (d) when the resistance, delay, or obstruction, and the removal or taking of the weapon or firearm or attempt thereof, was committed against the same . . . peace officer . . . ." The phrase "when no other punishment is prescribed" in subdivision (a)(1) of section 148, when read together with subdivision (e) of that section, evinces the Legislature's intent that when punishment is available for a conviction of a violation of subdivision (b), (c), or (d) of section 148 (discussed, *ante*) in

---

independent witness corroborates that the defendant actually had his or her hand on the firearm and tried to take the firearm away from the officer who was holding it. [¶] (6) The defendant's fingerprint was found on the firearm or holster. [¶] (7) Physical evidence authenticated by a scientifically verifiable procedure established that the defendant touched the firearm. [¶] (8) In the course of any struggle, the officer's firearm fell and the defendant attempted to pick it up. [¶] *(e) A person shall not be convicted of a violation of subdivision (a) in addition to a conviction of a violation of subdivision (b), (c), or (d) when the resistance, delay, or obstruction, and the removal or taking of the weapon or firearm or attempt thereof, was committed against the same* public officer, *peace officer,* or emergency medical technician. A person may be convicted of multiple violations of this section if more than one public officer, peace officer, or emergency medical technician are victims. [¶] (f) This section shall not apply if the public officer, peace officer, or emergency medical technician is disarmed while engaged in a criminal act." (Italics added.)

connection with an offense committed against a given peace officer, the defendant cannot also be punished under subdivision (a)(1) for the same act.

In construing the meaning of the phrase "when no other punishment is prescribed" in section 148(a)(1), we must also avoid an interpretation that would lead to absurd consequences. (See *Jenkins, supra*, 10 Cal.4th at p. 246.) Adoption of Christopher's interpretation of that phrase, under which his conviction of violating section 148(a)(1) would be barred because "other punishment" was available under another statute (§ 148.9(a)), could lead to absurd consequences. For example, under Christopher's interpretation of the phrase, a defendant who fought with a police officer trying to lawfully arrest him could not be convicted of willfully resisting the peace officer in violation of section 148(a)(1), because such conduct is punishable under either section 243, subdivision (b),[13] which prohibits the commission of a battery against the person of a peace officer engaged in the performance of his or her duties, or section 241, subdivision (b),[14] which prohibits the commission of an assault against the person of a peace officer engaged in the performance of his or her duties. California case law, however, holds that such conduct is indeed punishable under section 148(a)(1) notwithstanding the applicability of another Penal Code section prescribing punishment for the crime of battery. (*People v. Bugg* (1947) 79 Cal.App.2d 174, 175–176 [179 P.2d 346] [evidence supported a conviction of resisting police officers in the discharge of their duties during a lawful arrest in violation of section 148(a)(1) where it was shown the defendant had also committed the crime of battery upon the officers]; see also 2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Governmental Authority, § 18, pp. 1103–1104, citing *People v. Bugg, supra*, 79 Cal.App.2d 174.)

For all of the foregoing reasons, we conclude that on the facts of this case, the availability of punishment under section 148.9 did not bar Christopher's conviction of violating section 148(a)(1).

---

[13] Section 243, subdivision (b) provides: "When a battery is committed against the person of a peace officer . . . engaged in the performance of his or her duties, whether on or off duty, . . . the battery is punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment."

[14] Section 241, subdivision (b) provides: "(b) When an assault is committed against the person of a peace officer . . . engaged in the performance of his or her duties, . . . and the person committing the offense knows or reasonably should know that the victim is a peace officer . . . engaged in the performance of his or her duties, . . . the assault is punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in the county jail not exceeding one year, or by both the fine and imprisonment."

IV[*]

*RIGHT TO SELF-REPRESENTATION*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

McConnell, P. J., and Haller, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 14, 2006, S142218.

---

[*]See footnote, *ante*, page 418.