Filed 7/23/13  P. v. Pereira CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C071385 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F07102) |
| v. | |
| RONALD JOSEPH PEREIRA, | |
| Defendant and Appellant. | |

After a jury trial, defendant Ronald Joseph Pereira was convicted of robbery (Pen. Code, § 211; unless otherwise stated, all statutory references that follow are to the Penal Code), attempted carjacking (§§ 664/215, subd. (a)), felon in possession of a firearm (§ 12021, subd. (a)), and resisting an officer (§ 148, subd. (a)(1)).  The trial court sentenced him to six years six months in state prison.

On appeal, defendant contends the trial court erred in failing to instruct the jury that the specific intent to take property for a robbery must be formed before or during the use of force or fear.  We affirm.

1

On October 10, 2011, Broderick C. drove his mother's van to the Circle 7 store at the intersection of Watt Avenue and Marconi Avenue to buy iced tea and cigars. As Broderick C. left the store, defendant came up and took a swing at him. Broderick C. put up his fists in a defensive position while defendant ran at him and continued swinging. Broderick C. punched defendant in the face, knocking him to the ground. Defendant got up, grabbed Broderick C., and dragged him towards another car, where they both fell to the ground.

Broderick C. was on top of defendant and defendant yelled for someone to get Broderick C. off of him. Codefendant Eric Chiprez got out of the driver's seat of the car, Chiprez hit Broderick C. and pulled him off of defendant. Defendant stood up and commenced to kick Broderick C. while Chiprez stood by his car. Defendant eventually pulled off Broderick C.'s sweatshirt, causing Broderick C.'s keys, cell phone, iPod, and wallet to fall on the ground.

Defendant stopped the assault after the store's clerk threatened to call the police. Broderick C. stood up and saw codefendant Felicia Vasquez holding a handgun while sitting in the front passenger seat of Chiprez's car. Defendant said to Vasquez: "I should have slapped you, bitch, why you didn't shoot him, bitch? . . . Bitch, you had a clear shot, why you didn't shoot him?"

Broderick C. raised his hands and backed away. Vasquez held the gun on Broderick C. while defendant gathered Broderick C.'s belongings from the ground. Defendant then got into the back seat and Chiprez drove away.

Sacramento County Sheriff's Deputy Alex Lopez went to the place of the crime. Broderick C. was very upset and had abrasions on his head and elbow. Deputy Lopez examined the store's security camera recording, which showed a man standing next to the

door and immediately taking a swing at Broderick C. as he left the store. The remainder of the video was consistent with Broderick C.'s testimony.

Broderick C. testified that he did not know defendant or Chiprez before the incident. On the day after the incident, Broderick C. identified a photograph of Vasquez as the person in the car with the gun. He met Vasquez about three months before the incident at the apartment complex where they both lived, and had some contact with her through a mutual friend.

Deputy Lopez later saw the vehicle used in the crimes. With the help of another deputy, he stopped it and spoke to the driver, Chiprez. Broderick C. was taken to the place of the car stop, where he identified Chiprez. Chiprez remembered Broderick C., and said he knew he screwed up.

Shortly thereafter, Deputy Lopez learned that the other two people from the robbery were seen at a Wendy's restaurant about two blocks from the Circle 7 store. He went to the Wendy's, where he saw Vasquez in a wheelchair and a man standing nearby. The man ran off when he saw Deputy Lopez in his marked patrol car, carrying a bag or backpack with him. Deputy Lopez detained Vasquez while Detectives Joe Helfrick and Mike French went after the fleeing man.

Deputy Lopez asked Vasquez where her gun was. Vasquez motioned to her waist; Deputy Lopez lifted Vasquez's skirt and found a loaded .22 caliber pistol in her waistband.

Detectives Helfrick and French chased the man for several blocks. When the detectives were within 40 to 50 yards of him, the man, defendant, went to the car of Barbara E., which was parked in a thrift store parking lot. Barbara E. was in the driver's seat counting change. Defendant opened the driver's door and repeatedly yelled at Barbara E. to get out of the car. Barbara E. asked him, "What is the matter?" When she did not leave the car quickly enough, defendant started fumbling with his bag, which he could not open. This caused Barbara E. to fear for her safety.

3

Detective French closed in on defendant, who ran away from Barbara E.'s car. More deputies and a helicopter joined the pursuit after which defendant gave up. Barbara E. later identified defendant as the person who tried to take her car. Defendant's bag contained a loaded .44 caliber pistol, 10 rounds of ammunition, cell phones, keys, and $200 cash. Broderick C. later arrived and identified defendant as the person who assaulted and robbed him.

Vasquez's next door neighbor testified that Broderick C. and Vasquez regularly socialized around the apartment complex. Once when Vasquez was going out on a date, Broderick C. commented that she was "looking good today."

Testifying for defendant, an investigator for the Sacramento County District Attorney's office recounted an interview with Barbara E. Barbara E. told the investigator that a man had approached her car and told her to move over; she was not sure what was happening at the time.

During the second day of deliberations, the jury informed the trial court that it had reached verdicts on counts two through six, but was unable to reach a verdict on count one. The trial court took the verdicts on the five counts. Since the jury deliberated for no more than two and one-half hours, the trial court directed continued deliberation on count one.

The jury told the trial court the next day that it was unable to reach a verdict on count one, the robbery. The trial court told the jury it would give the jury any additional instructions or available resources to assist in deliberations. The foreperson replied: "The five different criteria[] of robbery is what we really deliberated on." The trial court asked if the jury could form "a question to help me clarify the law of robbery in such a way that it might help illuminate the requirements, sometimes, for one or more of the jurors?"

The foreperson asked for the trial court's "interpretation [of] four and five," because "maybe our interpretation may not be 100 percent correct." The trial court

4

directed the jury back to the deliberation room and instructed the foreperson to submit a written request. The jury submitted the following request shortly thereafter:

"1.) A more clear definition of 'force and fear,' as reference[d] in number 4 of 1600, including, if possible, the time limit on when fear is a factor to consider. Please also clarify what it means to use force and fear. Please also clarify as full[y] as possible: (if the defendant did not form this required intent until after using the force or fear, then he or she did not commit the robbery.)

"2.) How far apart (time) does the deprivation of property have to be from the use of force or fear?

"3.) We are still unclear on whether we can decide on a verdict for potential aider[s] and abettors if we cannot decide on a verdict for the potential perpetrator."

The trial was delayed for 12 days due to a sick juror. When proceedings resumed, the trial court responded with the following instruction:

"Ladies and Gentlemen, in this response I will attempt to restate and further clarify the law on the topics that you have raised. Please keep in mind the instructions that I have given you regarding the law as well as the instruction I have given you in my prior response. Many of your questions may be answered by a closer reading of those instructions.

"Questions One and Two--I've just reread those questions--you've asked for clarification regarding the terms force and fear. Court's response: There is no formal legal definition of the term force and fear. You should rely on the common, ordinary meaning of those terms. The element of fear means that the victim was afraid of injury to himself.

"You have also asked about a time limit on which fear is a factor to consider. And that's in quote, time limit on which fear is a factor to consider. It is--the Court's response: It is for you to decide whether the evidence has established that the victim was in fear, and if so, the time period for which that occurred. It is for you to decide whether

5

the evidence has established that force or fear was used, and if so, the time period in which that occurred. In order to prove the crime of robbery, each of the following elements must be proved: One, a person had possession of property of some value, however slight; two, the property was taken from that person or immediate presence; three, the property was taken against the will of that person; four, the taking or carrying away was accomplished either by force or fear to gain possession of the property; five, the property was taken with the specific intent permanently to deprive that person of the property.

"To be guilty of robbery as a perpetrator, the defendant must have formed the required specific intent either before the use of force or fear, or during the time such force or fear was being used. To be guilty of robbery as an aider and abettor, the defendant must have formed the intent to aid and abet the commission of the robbery before or while a perpetrator carried away the property to a place of temporary safety."

There was no objection to the instruction. The attorneys were allowed to present further closing argument following the instruction after which the jury resumed deliberating.

Later that morning, the jury restated its inability to reach a verdict on count one. The trial court instructed the jury to consider each defendant's (defendant, Vasquez and Chiprez were tried at the same time by the same jury) guilt on count one separately. Following further deliberation, the jury asked: "Do all five criteria have to be met on each defendant in the 'People must prove that' for the Penal Code Section 211, or can one or two criteria be [met]? The same goes for Aiding and Abetting (401)." The court answered that all five criteria had to be met for each defendant.

The following morning, the jury returned guilty verdicts on count one for defendant and Vasquez, but were deadlocked on Chiprez's guilt and on Vasquez's gun use allegation. The trial court declared a mistrial on the remaining issues upon which the jury was deadlocked.

6

DISCUSSION

Defendant contends the trial court's supplemental instructions regarding the mental element for robbery constituted reversible error.

Since defendant did not object to the instruction, his contention is forfeited unless the instruction affected his substantial rights. (§ 1259; *People v. Christopher* (2006) 137 Cal.App.4th 418, 426-427.) Substantial rights are equated with a miscarriage of justice, which results if it is reasonably probable the defendant would have obtained a more favorable result had the correct instruction been given. (*Christopher,* at pp. 426-427; *People v. Watson* (1956) 46 Cal.2d 818, 835-836.)

"On review, we examine the jury instructions as a whole, in light of the trial record, to determine whether it is reasonably likely the jury understood the challenged instruction in a way that undermined the presumption of innocence or tended to relieve the prosecution of the burden to prove defendant's guilt beyond a reasonable doubt. [Citation.]" (*People v. Paysinger* (2009) 174 Cal.App.4th 26, 30.) "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record. [Citation.]" (*Estelle v. McGuire* (1991) 502 U.S. 62, 72 [116 L.Ed.2d 385, 399].)

Defendant's contention focuses on one sentence of the four-paragraph instruction: "To be guilty of robbery as a perpetrator, the defendant must have formed the required specific intent either before the use of force or fear, or during the time such force or fear was being used." One element of robbery is the intent to permanently deprive the owner of the property. (*People v. Marshall* (1997) 15 Cal.4th 1, 34.) "[T]he evidence must show that the requisite intent to steal arose either before or during the commission of the act of force. [Citation.]" (*Ibid.*) Defendant asserts that since the sentence in question omitted the term "to take property," the instruction "did not tell the jury anything about the required relationship between the taking of property and fear and force." Noting the

7

jury's confusion on the elements of robbery, defendant claims the supplemental instruction "increased the jury's confusion by suggesting that a specific intent to use force or fear was sufficient to establish the crime of robbery." Given the jury's difficulty with the robbery count and the fact that defendant took the property after he finished assaulting the victim, defendant concludes that he was necessarily prejudiced by the alleged error.

Defendant's claim improperly isolates one sentence of the supplemental instruction from its context. As recounted above, the sentence defendant attacks was preceded by this sentence, describing the mental element of robbery: "the property was taken with the specific intent permanently to deprive that person of the property." It is clear that the term "required specific intent" in the allegedly erroneous sentence was referring to the prior sentence's "specific intent permanently to deprive that person of the property." The fact that these two sentences contain the only references in the instruction to the term "required specific intent" reinforces our conclusion.

Read as a whole, the supplemental instruction informed the jury that the intent to steal must be formed before or during the use of force or fear. This correctly stated the law.

DISPOSITION

The judgment is affirmed.

      HULL      , J.

We concur:

      RAYE      , P. J.

      BUTZ      , J.