Filed 4/21/21  P. v. Servantez CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B301359 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA092247) |
| v. | |
| JEFFREY SERVANTEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura F. Priver, Judge.  Affirmed.

Stanley Dale Radtke, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney, and Gary A. Lieberman, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Jeffrey Servantez (defendant) swung a knife at a sidewalk cellphone vendor and a jury convicted him of assault with a deadly weapon.  Defendant did not object to the instruction the trial court gave the jury on the elements of assault with a deadly weapon, but he now seeks reversal for instructional error.  Specifically, we are asked to decide whether the trial court prejudicially erred in giving the jury an instruction that in theory would allow it to find defendant's knife was an inherently deadly weapon.

## I.  BACKGROUND

On the afternoon of February 1, 2019, Jocelyn Gomez was working under a tented pavilion at a street corner providing free government-issued cellphones to qualified individuals.  Defendant, who uses a wheelchair, approached Gomez's table and asked if he qualified for a phone.  When Gomez said no, defendant cursed and yelled at Gomez while pounding on and pushing against her table, knocking over a drink.

Still yelling and cursing, Defendant wheeled himself away from Gomez and approached another nearby table staffed by Reina Cortez.  Gomez could still see defendant, and she saw him pull a knife from his pocket, which then fell to the ground and landed near Cortez's feet.  Cortez, who was sitting at the time, thought defendant had dropped the knife by accident and attempted to push the knife closer to him with her foot.

Defendant then leaned out of his wheelchair, grabbed the knife off the ground, and in a "very fast upward curving" or "swiping" motion, swung the point of the knife's blade close to Cortez—within six to eight inches of her midsection.  Defendant appeared "angry and upset" when he swung the knife, and Cortez

2

backed away quickly. If she had not moved away, Cortez believed she would have been "poke[d]" by the knife. Gomez saw defendant's "swinging" motion with the knife and thought it looked like he was trying to "shank" Cortez.

Defendant then rolled his wheelchair away from Cortez's table toward a nearby bus stop. Once at the stop, he yelled, swore, and banged on the stop's shelter with his hand, causing the people waiting for a bus to flee. Meanwhile, one of Gomez's co-workers called 911. On the 911 call, which was recorded, Gomez's colleague told the operator a man in a wheelchair with a knife "tried to stab my co-worker."

Police officers responding to the 911 call made contact with Cortez and she repeatedly demonstrated for them defendant's swinging motion with the knife. As the officers were interviewing Gomez and Cortez, Gomez spotted defendant and the officers arrested him. Upon defendant's arrest, the officers recovered a black folding knife from defendant's pocket.

The Los Angeles County District Attorney charged defendant with a single offense: assault with a deadly weapon other than a firearm (Pen. Code,[1] § 245, subd. (a)(1)). An initial trial resulted in a hung jury and a mistrial. A second jury trial was held in August 2019.

In this second trial (as in the first), the trial court instructed the jury on the crime of assault with a deadly weapon using former CALCRIM No. 875. The terms of that instruction figure prominently in this appeal, and we reproduce the bulk of it here (emphasis as in the original): "To prove that the defendant

---

[1] Undesignated statutory references that follow are to the Penal Code.

is guilty of [assault with a deadly weapon other than a firearm], the People must prove that: [¶] 1. The defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person; [¶] 2. The defendant did that act willfully; [¶] 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [¶] AND [¶] 4. When the defendant acted, he had the present ability to apply force with a deadly weapon other than a firearm to a person. [¶] . . . [¶] The terms *application of force* and *apply force* mean to touch in a harmful or offensive manner. The slightest touching can be enough if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough. The touching does not have to cause pain or injury of any kind. [¶] . . . [¶] The People are not required to prove that the defendant actually touched someone. [¶] The People are not required to prove that the defendant actually intended to use force against someone when he acted. [¶] . . . [¶] The term *deadly weapon other than a firearm* is any object, instrument, or weapon th[at] is inherently deadly or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury." The instruction did not further define an "inherently deadly" weapon, and the defense raised no objection to the instruction as given.

During closing argument, the prosecution emphasized evidence of defendant's "swinging, lunging, swiping" motion at Cortez with the knife, including her demonstration of that motion to the responding police officers shortly after the incident (as captured by an officer's body camera). Within the framing of the

4

court's instruction on the elements of assault with a deadly weapon, the prosecution argued the jury should find defendant's knife was a deadly weapon not because of its inherent characteristics but because of how he used it: "When we consider a knife, yes, I would say that most people would say that a knife is an inherently dangerous weapon. Someone may make the argument, well, a knife, we use it to eat with it. We use it to cut things in front of us. It's not always inherently dangerous but members of the jury the way that this knife was used in this case makes this undoubtedly a dangerous weapon because this knife was not used to cut anything. Not used to just play with. It's used to swipe and strike at a person's body. When you use the blade of this knife, only six to eight inches away from where someone is standing, that's dangerous."

Defendant's attorney argued the whole episode was more or less an accident. The defense asserted there was no evidence defendant was trying to harm Cortez and, in the defense's view, the evidence showed defendant only acted clumsily as he retrieved the knife he had dropped. Defense counsel did not argue the folding knife found on defendant was not a deadly weapon. And like the prosecution, the defense argued a knife is a deadly weapon only if it is used in a deadly manner.

The jury found defendant guilty of assault with a deadly weapon. The trial court later sentenced him to three years in prison.

## II. DISCUSSION

Defendant advances two related arguments in urging reversal for error in instructing the jury on assault with a deadly weapon. He concedes there was no objection to the instruction in

5

the trial court, but he believes we should still reverse because the instruction was erroneous and affected his substantial rights. (See generally § 1259; *People v. Christopher* (2006) 137 Cal.App.4th 418, 426-427 ["The cases equate substantial rights with reversible error, i.e., did the error result in a miscarriage of justice?"], internal quotation marks and citations omitted; *People v. Elsey* (2000) 81 Cal.App.4th 948, 953 ["Substantial rights are affected if the error 'result[s] in a miscarriage of justice, [i.e.,] making it reasonably probable defendant would have obtained a more favorable result in the absence of error'"].)

    We will affirm the judgment because defendant's substantial rights were not affected by the instruction given. Defendant's first argument—the straightforward contention that the instruction erroneously gave the jury the option of finding the knife was inherently deadly—fails because the defect in the instruction was harmless under the test set out in *People v. Aledamat* (2019) 8 Cal.5th 1 (*Aledamat*). The features of the instruction given, the prosecution's emphasis on how the knife was used, the absence of a dispute from the defense about whether the knife was a deadly weapon, and other findings the jury made in rendering its verdict all establish the error was harmless. Defendant's second argument—an intricate construct worthy of reproduction on its own terms in the margin[2]—also

_____

[2]    This is how defendant puts it in his opening brief: "Respondent may argue the jury would not interpret CALCRIM No. 875 in this manner because the instruction defines 'deadly weapon' as 'any object, instrument, or weapon that is inherently deadly or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury.' [Citation.] Respondent is likely to claim the jury would interpret

6

fails.  The instruction told the jury a weapon only qualifies as a deadly weapon if it is "used in such a way that it is capable of causing and likely to cause" death or great injury, the arguments of counsel concerning defendant's knife highlighted the same point, and there is no reason to believe the jury would have privileged other parts of the instruction to be led astray in the odd manner defendant now posits.

---

this language as meaning the defendant must use the weapon in a manner likely to cause death or great bodily injury, not just in a manner that would 'probably' produce a 'slight touching.'  [¶] There are several problems with that argument.  [¶]  First, the jury would have read this sentence in CALCRIM No. 875 after having been told repeatedly, in the main body of the instruction, that the gravamen of the crime is taking an action that makes it likely to 'apply force' to a person, and then having the term 'apply force' be defined as a 'slight touching. . . . [T]he jurors would assume that these repeated references to 'applying force' had some meaning and that the explicit definition of 'applying force' was the one they should follow.  The definition of 'deadly weapon' at the end of the instruction was unlikely to be interpreted as meaning any other standard applied, as discussed in the following paragraph, and thus it would not prevent the jurors from simply doing what the numbered paragraphs of CALCRIM No. 875 told them to do, which is to inquire whether the defendant's actions would 'probably' lead to a 'slight touching.' [¶]  The definition of 'deadly weapon' in CALCRIM No. 875 does not cure this problem because the definition is written in a way that merely asks the jury to consider the *hypothetical* uses of a weapon, instead of asking the jury to evaluate the way *the defendant himself* used the weapon, as is required."  (Emphasis in original.)

*A.	Inclusion of the "Inherently Deadly" Option in the Jury Instruction Was Error, But It Did Not Affect Defendant's Substantial Rights*

To find a defendant guilty of assault with a deadly weapon, a jury must among other things find the defendant "did an act with a deadly weapon that by its nature would directly and probably result in the application of force to a person." (§§ 240, 245, subd. (a)(1); *People v. Williams* (2001) 26 Cal.4th 779; CALCRIM No. 875.) The court here instructed the jury with the former version of CALCRIM No. 875 which defined "deadly weapon" as a weapon other than a firearm "that is inherently deadly or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury."[3]

A knife of the type used by defendant may "be a deadly weapon within the meaning of section 245, subdivision (a)(1) when used in a manner capable of causing and likely to cause death or great bodily injury." (*People v. Brown* (2012) 210 Cal.App.4th 1, 7.) But because the sort of knife in defendant's possession also has an ordinary, "innocent purpose," it is not an inherently deadly weapon. (*Aledamat*, *supra*, 8 Cal.5th at 6.) Presenting the jury with the inherently deadly option in the

---

[3]	CALCRIM No. 875 has since been revised. It now states: "[A deadly weapon other than a firearm is any object, instrument, or weapon [that is inherently deadly or one] that is used in such a way that it is capable of causing and likely to cause death or great bodily injury.]" The bench notes to the instruction state: "Give the bracketed phrase 'that is inherently deadly or one' and give the bracketed definition of inherently deadly only if the object is a deadly weapon as a matter of law."

8

assault with a deadly weapon instruction was therefore error. (*Aledamat*, *supra*, 8 Cal.5th at 6-7.)

Following *Aledamat*, however, it was not an error that resulted in a miscarriage of justice. That case involved the same error in former CALCRIM No. 875 as we have here, and our Supreme Court held the error was harmless based on a "number of circumstances." (*Aledamat*, *supra*, 8 Cal.5th at 13.) One of those circumstances was the wording of former CALCRIM No. 875 itself. That wording juxtaposed "inherently deadly" with "used in such a way that it is capable of causing injury and likely to cause death or . . . great bodily injury" such that the instruction "at least indicates what the 'inherently deadly' language was driving at." (*Aledamat*, *supra*, 8 Cal.5th at 13-14.) Our Supreme Court also looked to the prosecution's closing argument in that case and found it was unlikely the jury would view the box cutter as inherently deadly without considering how it was used. The prosecutor there argued the box cutter was deadly because "'you wouldn't want your children playing with' it," and the Court emphasized "no one ever suggested to the jury that there were two separate ways it could decide whether the box cutter was a deadly weapon." (*Id*. at 14.) In addition, the Supreme Court found it significant that the box cutter's status as a deadly weapon was not really a point of contention: while the defense attorney did not concede the box cutter was a deadly weapon, the attorney also did not argue it was not. (*Ibid*.)

We reach the same result here for essentially the same reasons. *Aledamat*'s point about the juxtaposition of the wording in CALCRIM No. 875 applies equally here. Neither the prosecutor nor defense counsel during closing argument in this case "suggested to the jury that there were two separate ways it

could decide whether the [knife] was a deadly weapon" (*Aledamat*, *supra*, 8 Cal.5th at 14); to the contrary, both sides focused on the manner in which defendant used the knife and defense counsel never argued defendant should be acquitted because the knife was not a deadly weapon. (*Ibid*. ["counsel never argued that, if he did assault the victim with the box cutter, the box cutter was not a deadly weapon"].) In addition, the *Aledamat* court reasoned it would have been impossible for the jury not to find the weapon in that case (a box cutter) was capable of causing and likely to cause death or bodily injury based on other facts the jury necessarily found, i.e., that "(1) defendant did an act with a deadly weapon (either inherently or as used) that by its nature would directly and probably result in the application of force; (2) defendant was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and (3) defendant had the present ability to apply force with a deadly weapon to a person." (*Aledamat*, *supra*, 8 Cal.5th at 15; see also *ibid*. ["'No reasonable jury that made all of these findings could have failed to find that defendant used the box cutter in a way that is capable of causing or likely to cause death or great bodily injury'"].) The jury here, which made the same findings as the jury in *Aledamat*, similarly must have found defendant used the knife "in a way that is capable of causing or likely to cause death or great bodily injury." (*Ibid*.)

10

> ### B. *We Are Convinced the Jury Knew It Must Find, and Did Find, Defendant Used the Knife In a Manner Capable of Causing and Likely to Cause Death or Great Bodily Injury*

Defendant's related argument for reversal, which we have already reproduced at length in the margin, is also unavailing. Defendant apparently believes the jury would have focused only on the portion of the instruction (the so-called "main body of the instruction," whatever that means) that defines "application of force" to include the "slightest touching" and determined it could find the knife deadly merely by finding defendant used it "in a manner that would 'probably result' in a 'slight touching' or a 'contact.'" The assertion is at war with the just-recounted observation in *Aledamat* about what a jury instructed with the identical version of former CALCRIM No. 875 must have found, and that is reason enough to reject it. (*Aledamat*, *supra*, 8 Cal.5th at 15 ["'No reasonable jury that made all of these findings could have failed to find' that defendant used the box cutter in a way that is capable of causing or likely to cause death or great bodily injury"].) Just as important, though, defendant's position is undermined by the text of the instruction itself, which expressly told the jury it must find exactly what defendant now supposes it did not, and by the arguments of counsel that focused the jury on the need to find the knife was capable and likely of causing death or great bodily injury as defendant himself used it. Put more simply, we see no reason to believe the jury would have ignored part of former CALCRIM No. 875 and relied only on the portion defendant now emphasizes to seek reversal. (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 475 ["[W]e must assume that jurors are intelligent persons and capable of understanding and

11

correlating all jury instructions . . ."], internal quotation marks and citation omitted.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

KIM, J.