Opinion
WERDEGAR, J.—
In this case we define the mental state necessary to violate Penal Code[1] section 529, paragraph 3 (hereafter sometimes paragraph 3), prohibiting false personation. The Court of Appeal held the statute requires an intent to subject the impersonated individual to liability for suit or prosecution, or to secure a benefit for any person. It therefore reversed defendant’s burglary conviction, which was predicated on entry with the intent to commit the underlying felony of false personation, because the pertinent jury instruction prejudicially omitted the required intent element.
We conclude section 529, paragraph 3, by its terms, is violated when one intentionally falsely personates another and, in such assumed character, does any act that might cause the liability or benefit described in the statute. Paragraph 3, in other words, requires the existence of no state of mind or criminal intent beyond that plainly expressed on the face of the statute. Accordingly, we reverse the decision of the Court of Appeal.
Facts
About 9:35 p.m. on March 22, 1996, defendant entered a Lucky supermarket in Rancho Palos Verdes. He approached store clerk Carlos Mariscal with a check and a driver’s license, asking Mariscal “if it was okay to cash the check before [defendant] started getting groceries” and stating he wanted the check approved by the manager. The Talcro Financial Services check was made out to one Chris Laughrey and endorsed by Laughrey. Recognizing that Laughrey, the person pictured on the license, was obviously not defendant, Mariscal called the manager, Sergio Montez, who told defendant he would have to verify the check. Defendant acquiesced and said he would remain there and buy some groceries.
Montez recognized the check as similar to one he had refused several days earlier. Another Lucky supermarket had then cashed that check and later discovered it was invalid. Both checks had been drawn on a closed account.
Montez asked Michael Gutierrez, another employee, to keep an eye on defendant. Meanwhile, Montez telephoned the other Lucky store to verify that the earlier check was of the same kind as the one defendant was attempting to cash. He then called the police.
*203 Defendant abruptly left the store for the parking lot when the police drove up. He entered an El Camino car on the passenger’s side. Gutierrez waved down Deputy Sheriff Chris Knox, who had been patrolling the Lucky parking lot in his vehicle, and told Knox, “That’s him.” Knox followed the El Camino as it drove out of the parking lot, stopped it, and detained defendant and the driver. Defendant gave Knox two false names.
Defendant testified that, on the day he was arrested, he had met his friend, Cherise Hartley, at her house in San Pedro. Hartley asked him if he would cash a check for her, as she needed money to pay for food, diapers and rent. Chris Laughrey, the father of her child, had given her the check and permission to cash it, but was then in a rehabilitation center. She showed defendant a previously endorsed check and Laughrey’s driver’s license. Hartley told defendant, and he believed that the check was good. He agreed to help her, and they drove to the Lucky store. His account of what happened there generally accorded with the testimony of the store personnel, except he denied leaving the store because of the arrival of the police. Defendant testified he never said he was Chris Laughrey, but he admitted saying he had no other identification and that he intended to pass himself off as Laughrey in order to cash the check. When the manager took the check, saying he would have to verify it, defendant felt something was not quite right, so he went outside to ask Hartley if there was a problem with the check. She told him to get into the car and “forget it.” When arrested, defendant gave a false name because he was then on parole and would have been “assumed guilty of anything.”
Defendant was charged with forgery (§ 470), possession of a completed check with intent to defraud (§ 475, subd. (a)) and second degree burglary (§ 459). It was specially alleged he had previously been convicted of three serious or violent felonies (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)) and had served three prior prison terms (§ 667.5, subd. (b)).
The prosecution presented four alternative theories of burglary: entering a building (1) with the specific intent to steal, (2) with the specific intent to commit forgery, (3) to commit the crime of possession of a completed check with the specific intent to defraud, or (4) to falsely personate another in violation of section 529, paragraph 3. The jury convicted defendant of second degree burglary on the false personation theory,[2] acquitted him of forgery, and failed to reach a verdict on the charge of possession of a *204 completed check with the intent to defraud. It found true the special allegations. The trial court denied defendant’s motions for new trial, to strike the prior convictions, and to reduce the charge to a misdemeanor. It imposed a sentence of 25 years to life imprisonment.
Discussion
In a burglary prosecution, complete and accurate jury instructions include the definition of each felony the defendant is alleged to have intended to commit upon entry into the burglarized structure. (See People v. Failla (1966) 64 Cal.2d 560, 564 [51 Cal.Rptr. 103, 414 P.2d 39]; cf. People v. Prettyman (1996) 14 Cal.4th 248, 266-267 [58 Cal.Rptr.2d 827, 926 P.2d 1013] [similar instructional requirement obtains under natural and probable consequences doctrine].) Thus, in order to convict defendant of burglary on the theory that he entered the Lucky store with the intent to commit false personation, the jury should have been provided with a correct definition of false personation.
In assessing whether the jury in this case was correctly instructed, we first turn to the statute defining the offense of false personation. As relevant here, section 529 provides: “Every person who falsely personates another in either his private or official capacity, and in such assumed character . . . : [¶] . . . [¶] 3. Does any other act whereby, if done by the person falsely personated, he might, in any event, become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating, or to any other person; [¶] Is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment.” The statutory language first appeared in the Statutes of 1850, chapter 99, section 90, page 241, apparently having been derived from the New York Revised Statutes of 1828 (2 N.Y. Rev. Stats. (1828) § 48, p. 676). The California Legislature codified section 529 in 1872 and has not changed it in any relevant respect since that time. Unsurprisingly, ‘ given the antiquity of the statute, there is no available legislative history to assist us in its interpretation.
At issue here is whether, as defendant urges, paragraph 3 of section 529 requires, for conviction, that defendant impersonated' Chris Laughrey, specifically intending to cause Laughrey to become liable to any suit or prosecution or to pay any sum of money, or specifically intending to benefit himself or another. The Court of Appeal so construed the statute and, *205 because the jury was not so instructed, reversed defendant’s burglary conviction.[3]
“Specific and general intent,” we have cautioned, “have been notoriously difficult terms to define and apply . . . .” (People v. Hood (1969) 1 Cal.3d 444, 456 [82 Cal.Rptr. 618, 462 P.2d 370].) The standard formulation of the two concepts appears in Hood’. “When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant’s intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.” (Id. at pp. 456-457.)
Resolution of this case does not require us to fit the offense of false personation into either the specific or the general intent category. Such classification of offenses is necessary “only when the court must determine whether a defense of voluntary intoxication or mental disease, defect, or disorder is available; whether evidence thereon is admissible; or whether appropriate jury instructions are thereby required. [Citation.]” (People v. Hering (1999) 20 Cal.4th 440, 446-447 [84 Cal.Rptr.2d 839, 976 P.2d 210].) In this case, defendant does not defend on any such ground; rather, “[he] simply contends that in addition to instructions that tracked the statutory language, the trial court should have included one on specific intent. . . . This case aptly illustrates the general principle that—other than circumstances involving a mental state defense—‘the characterization of a crime as one of specific intent [or general intent] has little meaningful significance in instructing a jury. The critical issue is the accurate description of the state of mind required for the particular crime.’ [Citations.]” (Id. at p. 447, second bracketed text added in Hering.)
Section 529, paragraph 3 does not explicitly require that a defendant who impersonates another specifically intend to cause the latter to become liable to any suit or prosecution or to pay any sum of money, or specifically intend to benefit defendant himself or another person. The Legislature included in paragraph 3 none of the language typically denoting specific intent, such as “with the intent that” or “for the purpose of.” (See People v. Hering, supra, 20 Cal.4th at p. 446.) To the contrary, paragraph 3 *206 is framed in language reasonably susceptible of only one interpretation: that the Legislature sought to deter and to punish all acts by an impersonator that might result in a liability or a benefit, whether or not such a consequence was intended or even foreseen. No fewer than seven times does the word “any” appear in the statute: “[A]ny other act. . . in any event . . . any suit or prosecution . . . any sum of money . . . any charge . . . any benefit. . . any other person.” (§ 529, par. 3, italics added.) The impersonator’s act, moreover, is criminal provided it might result in any such consequence; no higher degree of probability is required.
Despite the absence of any language restricting section 529, paragraph 3 to acts undertaken by impersonators with an intent to cause a benefit or liability as described therein, the Court of Appeal in People v. Robertson (1990) 223 Cal.App.3d 1277 [273 Cal.Rptr. 209], opined that such an intent is required for a conviction of false personation. The defendant in Robertson was arrested in August 1986 for stealing a truck. On arrest he gave a false name, that of his brother, and continued to masquerade as his brother throughout his arraignment and release on his own recognizance. He failed to appear at a scheduled hearing, whereupon a bench warrant was issued. The brother was later arrested in Texas on the warrant and extradited to California, where criminal proceedings were instituted. The brother was found incompetent to stand trial and was committed to Atascadero State Hospital, where he remained incarcerated for more than a year before hospital authorities notified county officials that they did not believe the brother was the person arrested in August 1986. Ultimately the deception was discovered, and the defendant was identified through fingerprint evidence. The sole issue on appeal in Robertson was whether section 529, paragraph 3 criminalizing false personation, was preempted by a more specific statute, section 148.9, subdivision (a), which prohibits falsely identifying oneself to a peace officer during a lawful detention. In the course of comparing the elements of the two offenses, the Court of Appeal stated: “[F]or a conviction based on section 529, [paragraph] 3, the prosecution must establish that at the time of the offense the defendant had the specific intent to commit that crime; or, in the words of the court here, he falsely personated another with the specific intent to obtain a benefit for himself or to cause another to become liable for prosecution or pay a sum of money.” (People v. Robertson, supra, 223 Cal.App.3d at pp. 1281-1282.) For this proposition, the Robertson court cited only People v. Vaughn (1961) 196 Cal.App.2d 622, 630-631 [16 Cal.Rptr. 711].
Whether Vaughn is properly read as requiring a specific intent to obtain a benefit or subject another to liability, however, is questionable. Vaughn arose out of the prosecution of a criminal defense attorney who, to test the *207 reliability of a police officer’s identification of his client, caused the client’s twin sister to pose as the client during a court hearing. He was convicted of violating section 529, paragraph 3 on an aiding and abetting theory, for which the prosecution was required to prove he acted “with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.” (People v. Beeman (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318], italics omitted; see People v. Mendoza (1998) 18 Cal.4th 1114, 1131 [77 Cal.Rptr.2d 428, 959 P.2d 735] [aider and abettor’s state of mind is a “ ‘required specific intent’ ” for which evidence of voluntary intoxication is admissible pursuant to section 22].) In affirming the conviction, the Court of Appeal held “[t]he jury could reasonably conclude defendant had the specific intent to do an act whereby a benefit might accrue to [his client] and that he thereby aided and abetted [his client’s sister] in personating [his client].” (People v. Vaughn, supra, 196 Cal.App.2d at p. 631, italics in original.) Significantly, the Court of Appeal found no error in instructional language taken almost verbatim from section 529, paragraph 3, which, as we have seen, contains no explicit reference to an intent to subject another to liability or to obtain a benefit. (People v. Vaughn, supra, at p. 633.) Vaughn, therefore, is doubtful authority for the proposition that false personation is a specific intent crime; the Robertson court uncritically read Vaughn’s description of the standard of aider and abettor liability, as applied to paragraph 3, into the definition of the crime itself.
Defendant argues that, when section 529, paragraph 3 is considered in the context of its surrounding statutes (see People v. Simon (1995) 9 Cal.4th 493, 514 [37 Cal.Rptr.2d 278, 886 P.2d 1271]), the section obviously contains a requirement of a specific intent to cause another person harm or wrongfully to benefit someone. This is because virtually all other impersonation statutes, according to defendant, include an element of specific intent to defraud, or some similar mens rea, or some wrongful conduct in addition to the impersonation. (E.g., Pen. Code, §§ 528 [marriage under false personation], 530 [receiving money or property under false personation]; see also id., § 146a, subd. (b) [impersonating a state public officer, investigator or inspector]; Veh. Code, § 27 [impersonating a California Highway Patrol officer].) We find defendant’s argument unpersuasive. The various statutes prohibiting different types of impersonations neither appear to comprise a statutory scheme governing false personation generally (cf. People v. Simon, supra, 9 Cal.4th at p. 514) nor invariably contain a specific intent requirement. To the extent, moreover, that other statutes include a specific intent element, the omission of such an element in section 529 weighs in favor of our interpretation.
Defendant may be understood to argue, more broadly, that, whatever the actual language of section 529, paragraph 3, for this court not to construe the *208 statute as requiring a specific intent to cause the described liability or benefit would be unfair, given that other impersonation statutes expressly requiring such intent carry only misdemeanor penalties. (E.g., §§ 532b [impersonating a veteran or ex-serviceman], 538d [impersonating a peace officer], 538e [impersonating a member of a fire department or a state fire marshal], 538f [impersonating a public utility employee].) His argument, of course, is better addressed to the Legislature. Given, moreover, the potentially drastic consequences that may befall an impersonated individual in the circumstances described by the statute, including serious damage to his or her financial circumstances or personal freedom, we cannot say that felony punishment is necessarily too harsh.
In any event, section 529 is punishable as either a felony or a misdemeanor, and trial courts in the course of sentencing violators of the statute may exercise whatever discretion they otherwise possess in determining the appropriate penalty. (E.g., People v. Superior Court (Alvarez) (1997) 14 Cal.4th 968 [60 Cal.Rptr.2d 93, 928 P.2d 1171] [discretion to reduce “wobblers” to misdemeanors]; People v. Superior Court (Romero) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] [discretion to strike priors].) In the present case, after the jury found defendant guilty of second degree burglary on the theory he entered the Lucky store with the intent to commit false personation, and found true the allegation he had previously been convicted of three prior serious felonies, the trial court denied defendant’s motions to strike the priors or reduce the charge to a misdemeanor. Defendant, therefore, has availed himself (albeit unsuccessfully) of the opportunity to seek a favorable exercise of the sentencer’s discretion.
Defendant urges that the false personation statute must be read to contain a specific intent element in order to avoid criminalizing innocent behavior. Defendant’s brief recites a variety of scenarios in which a person utterly free from criminal intent could be subject to prosecution for engaging in some conduct that might confer a benefit on him or her while impersonating another. Defendant, however, cites no instance in the history of this state of any person’s being prosecuted for, e.g., trick-or-treating or attending a costume party, and we are aware of none. The ancient customs of masquerade and trick-or-treating antedate, and have survived, the enactment of section 529. The statute clearly was not designed to eliminate these innocuous practices.
Indeed, early decisions by this court strongly suggest that the offense of false personation requires a deliberate effort to pass oneself off as another. (See People v. Maurin (1888) 77 Cal. 436, 439 [19 P. 832] [reversing a conviction under section 529 in the absence of evidence defendant “pretended to any human being” that he was another]; cf. People v. Sprague *209 (1879) 53 Cal. 491, 494 [interpreting “false” as used in Code of Civil Procedure, former section 2061, as meaning “untrue, not as the result of mistake or inadvertence, but willfully and with the design to deceive”]; see also 1 Bouvier’s Law Diet. (1897 ed.) p. 755 [“Applied to the intentional act of a responsible being,” the word “false” “implies a purpose to deceive . . . .”].) The innocent examples proffered by defendant differ from the criminal offense with which we are concerned, in that they involve acts of transparent impersonation, highlighting—rather than concealing—the impersonator’s artifice.
Defendant further argues that the potentially harsh penalties for false personation compel us to infer a specific intent requirement, as the offense is not of a “public welfare” type such as would justify dispensing with a mental element. (See United States v. X-Citement Video, Inc. (1994) 513 U.S. 64, 71 [115 S.Ct. 464, 468, 130 L.Ed.2d 372]; Staples v. United States (1994) 511 U.S. 600, 606-607, 616-617 [114 S.Ct. 1793, 1798, 1802-1803, 128 L.Ed.2d 608]; People v. Simon, supra, 9 Cal.4th at pp. 509, fn. 13, 519-522; In re Jorge M. (2000) 23 Cal.4th 866 [98 Cal.Rptr.2d 466, 4 P.3d 297].) As we have seen, however, section 529, paragraph 3, unlike public welfare offenses, does not dispense with a mental element. One does not violate paragraph 3 merely by happening to resemble another person. Rather, one must intentionally engage in a deception that may fairly be described as noninnocent behavior, even if, in some instances, it might not stem from an evil motive.
Defendant contends that to apply our ruling to him would violate the due process and ex post facto clauses of the state and federal Constitutions. We disagree. “A statute 1 “which makes more burdensome the punishment for a crime, after its commission,” ’ violates article I, section 9, clause 3, of the United States Constitution as an ex post facto determination of criminal liability [citations], as well as its California counterpart, article I, section 9 of the state Constitution [citation]. Correspondingly, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates in the same manner as an ex post facto law. [Citations.]” (People v. Davis (1994) 7 Cal.4th 797, 811 [30 Cal.Rptr.2d 50, 872 P.2d 591].) Courts violate constitutional due process guarantees when they impose unexpected criminal penalties by construing existing laws in a manner that the accused could not have foreseen at the time of the alleged criminal conduct. (United States v. Lanier (1997) 520 U.S. 259, 266-267 [117 S.Ct. 1219, 1225, 137 L.Ed.2d 432]; Bouie v. City of Columbia (1964) 378 U.S. 347, 353 [84 S.Ct. 1697, 1702, 12 L.Ed.2d 894]; People v. Blakeley (2000) 23 Cal.4th 82, 91-92 [96 Cal.Rptr.2d 451, 999 P.2d 675].)
We conclude that our reading of paragraph 3 cannot fairly be described as an unforeseeable enlargement of criminal liability, notwithstanding the error of the court below. As we have seen, the statute plainly *210 encompasses an impersonator’s commission of any act that might result in a liability. That one appellate decision (i.e., People v. Robertson, supra, 223 Cal.App.3d 1277) erroneously conflated another’s (i.e., People v. Vaughn, supra, 196 Cal.App.2d 622) description of the mens rea of an aider and abettor of false personation with the elements of the crime itself did not generate such a firmly established rule as to erect a constitutional bar to our applying the present decision to this defendant. (See People v. Sobiek (1973) 30 Cal.App.3d 458, 476 [106 Cal.Rptr. 519, 82 A.L.R.3d 804].)
Disposition
The judgment of the Court of Appeal is reversed.
George, C. J., Mosk, J., Baxter, J., and Chin, J., concurred.

Unless otherwise indicated, all further statutory references are to the Penal Code.

When polled, the jurors unanimously indicated they had found defendant guilty on the false personation theory.

The instruction given the jury generally tracked the statutory language and read as follows: “Every person who falsely personates another, and does an act which, had it been done by the person falsely personated, might have subjected that person to either a suit or prosecution, or some kind of debt or fine; or which benefitted the defendant or any other person in some way, is guilty of a felony.”