**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIO JORGE BLANCO,

                *Petitioner,*

        v.

MICHAEL B. MUKASEY,* Attorney
General,

               *Respondent.*

No. 06-71385

Agency No.
A79-159-176

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 18, 2007—Pasadena, California

Filed March 3, 2008

Before: Harry Pregerson, Michael Daly Hawkins and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fisher;
Concurrence by Judge Pregerson

---

*Michael B. Mukasey is substituted for his predecessor, Alberto R. Gonzales, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

1875

## COUNSEL

Michael J. Codner (argued) and Murray D. Hilts, Law Offices of Murray Hilts, San Diego, California, for the petitioner.

Anthony C. Payne (argued) and Alison R. Drucker, United States Department of Justice, Washington, D.C., for the respondent.

## OPINION

FISHER, Circuit Judge:

Mario Jorge Blanco petitions for review of a final order of removal, arguing that the Board of Immigration Appeals ("BIA") erred in holding that he is an inadmissible alien who is not eligible for any discretionary relief. The BIA found Blanco to be ineligible for adjustment of status because he made a false claim to citizenship when he was detained at the border, and ineligible for cancellation of removal because he had been convicted of crimes involving moral turpitude. Because the BIA's moral turpitude finding was flawed, we grant Blanco's petition as to cancellation of removal, but deny his petition in all other respects.

## FACTS AND PRIOR PROCEEDINGS

Blanco is a native and citizen of Argentina who has been living in the United States since 1978. In 2001, Blanco traveled to Mexico with his wife and a co-worker to deliver a truckload of furniture. He was stopped by the Border Patrol

when he applied for admission into the United States. He presented a California driver's license, social security card and various membership cards to the Border Patrol agents, but did not have immigration documents. The officer at the primary inspection point suspected that Blanco had made a false claim to U.S. citizenship and referred him to secondary inspection for further questioning, which led to his being placed in detention. The Immigration and Naturalization Service ("INS")[1] thereafter instituted removal proceedings against him.

The INS charged Blanco with being inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an alien who was not in possession of valid entry documents, and under § 1182(a)(6)(C)(ii) as an alien who made a false claim to U.S. citizenship in order to gain entrance to the United States.[2] Blanco contested these charges and also applied for various forms of relief from removal proceedings, including cancellation of removal available for certain long-time residents under § 1229b(b) and adjustment of status under § 1255(i). Blanco conceded that he was inadmissible as an alien without a valid visa, but argued that he had never falsely claimed U.S. citizenship at the border. Ruling against Blanco on both charges, the immigration judge ("IJ") found Blanco to be inadmissible.

The IJ denied Blanco's request for adjustment of status because under then-existing federal regulations, this relief was unavailable to arriving aliens. The IJ further held that Blanco was not eligible for consideration for cancellation of removal because he had been convicted of two crimes involving moral turpitude, as defined by § 1182(a)(2). Although ordinarily

_____

[1]On March 1, 2003, the INS was dissolved as an independent agency within the Department of Justice and its functions were transferred to the Department of Homeland Security. Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205.

[2]Hereinafter, all statutory citations are to Title 8 of the U.S. Code unless cited otherwise.

cancellation relief is barred if the alien has committed even one such crime, one of Blanco's convictions — in 1980, for receipt of stolen property — was a misdemeanor violation, which allowed Blanco to remain eligible for cancellation of removal under the so-called petty offense exception. *See* § 1182(a)(2)(A)(ii). However, because the IJ determined that *another* of Blanco's prior convictions — a 1986 misdemeanor conviction for false identification to a peace officer under California Penal Code § 148.9(a) — was also a crime involving moral turpitude, the IJ held that Blanco was not eligible for the petty offense exception. The IJ ordered Blanco removed to Argentina.

Blanco timely appealed to the BIA. The BIA declined to affirm the IJ's adjustment of status ruling in light of our intervening decision in *Bona v. Gonzales*, 425 F.3d 663 (9th Cir. 2005), which held that regulations barring arriving aliens from applying for adjustment of status were invalid. It nevertheless denied Blanco's adjustment of status application, holding that his false claim of United States citizenship at the border barred such relief. *See* § 1255(a). The BIA affirmed the IJ's conclusion that Blanco was not eligible for cancellation of removal because he had been convicted of two crimes involving moral turpitude. Lastly, the BIA denied Blanco's request for a remand based on ineffective assistance of his prior counsel. Blanco filed a timely petition for review before this court.

## ANALYSIS

We have jurisdiction to review the petition under § 1252(b). Because Blanco was not ordered removed as a criminal alien under § 1182(a)(2), the jurisdictional bar of § 1252(a)(2)(C) does not apply. We review questions of law de novo, including "whether a state statutory crime constitutes a crime involving moral turpitude." *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1017 (9th Cir. 2005). We review findings of fact by the IJ and BIA for substantial evidence. *See*

*INS v. Elias-Zacarias*, 502 U.S. 478, 481 & n.1 (1992); *see also* § 1252(b)(4)(B). Where, as here, the BIA "has reviewed the IJ's decision and incorporated portions of it as its own, we treat the incorporated parts of the IJ's decision as the BIA's." *Molina-Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir. 2002).

## I.

Blanco argues that the BIA erred in holding that he was not eligible for cancellation of removal because his misdemeanor conviction for false identification to a peace officer under California Penal Code § 148.9(a) is not a crime involving moral turpitude. We agree.

**[1]** In determining whether a conviction qualifies as a crime involving moral turpitude, we apply the categorical and modified categorical approaches set forth in *Taylor v. United States*, 495 U.S. 575, 599-602 (1990).[3] *See Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1017 (9th Cir. 2005). Under the categorical approach, a crime involves moral turpitude if the generic elements of the crime show that it involves conduct that "(1) is base, vile, or depraved and (2) violates accepted moral standards." *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1068 (9th Cir. 2007) (en banc). The Supreme Court has held that crimes that involve fraud categorically fall into the definition of crimes involving moral turpitude. *See Jordan v. De George*, 341 U.S. 223, 227 (1951) ("Without exception . . . a crime in which fraud is an ingredient involves moral turpitude."); *see also Cerezo v. Mukasey*, Nos. 05 74688 & 05-75213, ___ F.3d ___, 2008 WL 115184 at *2 (9th Cir. Jan.

---

[3]Because the record here does not include any of the documents that would allow us to conduct a modified categorical analysis, we employ only the categorical approach. *See United States v. Vidal*, 504 F.3d 1072, 1086 (9th Cir. 2007) (en banc) (noting that when conducting a modified categorical analysis, the court's review is "limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge") (internal quotation marks omitted).

14, 2008); *Carty v. Ashcroft*, 395 F.3d 1081, 1083 (9th Cir. 2005).

**[2]** Whether Blanco was convicted of a crime of fraud depends on the statutory definition of the crime. In 1986, Blanco pled guilty to violating California Penal Code § 148.9(a), which provides:

> Any person who falsely represents or identifies himself or herself as another person or as a fictitious person to any peace officer . . . upon a lawful detention or arrest of the person, either to evade the process of the court, or to evade the proper identification of the person by the investigating officer is guilty of a misdemeanor.

**[3]** The California courts have explained that a violation of California Penal Code § 148.9(a) occurs whenever any person falsely identifies himself in a way that would mislead the officer and evade proper identification, including by giving a false name or date of birth. *See In re Ivan J.*, 88 Cal. App. 4th 27, 30-32 (Cal. Ct. App. 2001). To convict a defendant under the statute, the prosecutor does not need to show that the individual had specific intent to obtain a benefit or cause another to be liable on his behalf; rather, the prosecutor "need only establish general intent . . . that the defendant intended to do the act which forms the basis of the crime, whether or not he knew that the act was unlawful." *People v. Robertson*, 223 Cal. App. 3d 1277, 1281-82 (Cal. Ct. App. 1990), *rev'd on other grounds by People v. Rathert*, 6 P.3d 700, 704-05 (Cal. 2000). Thus a conviction under California Penal Code § 148.9(a) requires a showing that the individual knowingly misrepresented his or her identity to a peace officer, but does not require that the individual thereby knowingly attempted to obtain anything of value.

**[4]** A crime involves fraudulent conduct, and thus is a crime involving moral turpitude, if intent to defraud is either

"explicit in the statutory definition" of the crime or "implicit in the nature" of the crime. *Goldeshtein v. INS*, 8 F.3d 645, 648 (9th Cir. 1993) (internal quotation marks omitted). Intent to defraud is not explicitly required by California Penal Code § 148.9(a), which requires only the knowing provision of false information. The element of knowing misrepresentation does not itself make fraud an element of the crime, however, because it shows only that "the forbidden act is done deliberately and with knowledge," and not that the individual acts with evil intent. *See id.* (quoting *Hirsch v. INS*, 308 F.2d 562, 567 (9th Cir. 1962)). Because intent to defraud is not a statutory element of the offense, we must determine whether intent to defraud is part of the crime's "essential nature." *Id.* at 649.

**[5]** Our cases hold that intent to defraud is implicit in the nature of the crime when the individual makes false statements in order to procure something of value, either monetary or non-monetary. *See id.* (holding that fraud is not inherent where crime "does not involve the use of false statements . . . nor does the defendant obtain anything" of value); *see also Navarro-Lopez*, 503 F.3d at 1076 (Reinhardt, J., concurring); *cf. Notash v. Gonzales*, 427 F.3d 693, 698 (9th Cir. 2005) (holding fraud not inherent where statute "did not require an intent to deprive the United States of revenue"). Fraud therefore does not equate with mere dishonesty, because fraud requires an attempt to induce another to act to his or her detriment. *See* Black's Law Dictionary 685 (8th ed. 2004). One can act dishonestly without seeking to induce reliance. Our cases have therefore recognized fraudulent intent only when the individual employs false statements to obtain something tangible. *See, e.g.*, *McNaughton v. INS*, 612 F.2d 457, 459 (9th Cir. 1980) (securities); *Winestock v. INS*, 576 F.2d 234, 235 (9th Cir. 1978) (securities); *Bisaillon v. Hogan*, 257 F.2d 435, 437 (9th Cir. 1958) (a passport); *see also Zaitona v. INS*, 9 F.3d 432, 437 (6th Cir. 1993) (a driver's license); *United States ex rel. Popoff v. Reimer*, 79 F.2d 513, 515 (2d Cir. 1935) (naturalization papers); *Matter of R-*, 5 I. & N. Dec. 29, 38 (BIA 1952) (military deferment).

**[6]** When the only "benefit" the individual obtains is to impede the enforcement of the law, the crime does not involve moral turpitude. In *Navarro-Lopez*, we held that the crime of misprision of a felony does not involve moral turpitude, even though a conviction for misprision of a felony under California law requires "knowing interference with the enforcement of the law with the specific intent to help a principal avoid arrest or trial." 503 F.3d at 1070. The crime of false identification to a peace officer under California law also punishes the "wrongful interference with the administration of justice," *Robertson*, 223 Cal. App. 3d at 1282, but notably does *not* require a showing of specific intent to avoid arrest or trial. *Id.* at 1281-82. Although giving a false name or date of birth to a police officer clearly "violates a duty owed to society to obey the law and not to impede the investigation of crimes," this alone does not make the crime one that involves moral turpitude, because "[i]f this were the sole benchmark for a crime involving moral turpitude, every crime would involve moral turpitude." *Navarro-Lopez*, 503 F.3d at 1070-71.[4]

**[7]** We hold that because the crime of false identification to a peace officer does not require fraudulent intent under California law, it is not categorically a crime involving moral turpitude under § 1182(a)(2).[5] Accordingly, we remand to the BIA to consider whether Blanco should be granted cancellation of removal.

---

[4] *But see Padilla v. Gonzales*, 397 F.3d 1016 (7th Cir. 2005) (holding that obstruction of justice is a crime involving moral turpitude); *Itani v. Ashcroft*, 298 F.3d 1213 (11th Cir. 2002) (holding that misprision of a felony is a crime involving moral turpitude). Our circuit, however, has adopted a different approach. *See Navarro-Lopez*, 503 F.3d at 1074 (misprision of a felony is not a crime involving moral turpitude); *see also id.* at 1077-78 (Reinhardt, J., concurring) (explaining that "[n]either [*Padilla* nor *Itani*] is persuasive").

[5] Because we hold that Blanco's crime is not a crime that involves moral turpitude, we need not address Blanco's alternative argument that the existence of his conviction was not properly established in evidence before the IJ.

## II.

Blanco argues that the BIA erred in holding that he was an inadmissible alien who was not eligible to be considered for adjustment of status, based on its finding that Blanco made a false claim of United States citizenship when he was detained at the U.S.-Mexico border in 2001. In removal proceedings, the alien has the burden of establishing that he is " 'clearly and beyond doubt entitled to be admitted and is not inadmissible.' " *Pichardo v. INS*, 216 F.3d 1198, 1200 (9th Cir. 2000) (quoting § 1229a(c)(2)(A)). We hold that the BIA's determination that Blanco made a false claim to citizenship was supported by substantial evidence and so we deny the petition as to this claim. *See Elias-Zacarias*, 502 U.S. at 481 & n.1.

The INS charged Blanco with being an inadmissible alien in part because it alleged he had made a false assertion of U.S. citizenship when he was stopped by the Border Patrol when attempting to re-enter the United States. *See* § 1182(a)(6) (C)(ii). Blanco disputed that he ever told the Border Patrol officer that he was a U.S. citizen, insisting that he told the officer that he was born in Argentina, but "grew up in East LA." He also denied admitting to the secondary inspection officer that he had made a false claim to citizenship. Although he signed a sworn statement admitting that he had made the false claim, he testified during his removal proceedings that he signed it only because the officer told him that he could "go home" if he signed it, which he thought meant he could go home to the United States.

During removal proceedings, the government produced the sworn statement signed by Blanco. The statement showed that in response to the question, "Did you declare yourself to be a United States citizen," Blanco answered, "Yes." The government also produced two Border Patrol officers who had spoken to Blanco during primary and secondary inspection, as well as the immigration inspector who interviewed and took Blanco's sworn statement. The two officers had no indepen-

dent recollection of Blanco but testified that their contemporaneously created records, which indicated that Blanco had falsely claimed citizenship, were reliable. The immigration inspector also did not have an independent recollection of Blanco, but described how he recorded oral statements during interviews and obtained signed statements. He testified that he never told individuals that they could "go home" if they signed a statement.

[8] Although Blanco's account of the misunderstanding between himself and the border guards — that he only said he "grew up" in Los Angeles, not that he was "born" there — is plausible, we hold that the IJ's decision was supported by substantial evidence. The record shows that Blanco had motivation to misrepresent himself as a citizen, because he had previously left the United States without any immigration documents, had been detained at reentry and warned not to travel again without proper documentation. Most importantly, however, Blanco's own signed statement contradicted his testimony during removal proceedings. Blanco argues here that his signed statement should not have been admitted into evidence because it was not "voluntary and knowing," *see Choy v. Barber*, 279 F.2d 642, 646 (9th Cir. 1960) (holding that "statements made by the alien and used to achieve his deportation must be voluntarily given"), but Blanco's only support for this due process argument is that he had to wait as long as 26 hours between his initial detention and his interview and that he was provided only bologna and cheese to eat. Although the deprivation of food and sleep can affect the voluntariness of a confession, *see Reck v. Pate*, 367 U.S. 433, 441-42 (1961), Blanco has not established that his "will was overborne," *see Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).[6]

---

[6]Because we are denying the petition as to Blanco's adjustment of status claim, we do not address the impact of regulations promulgated by the Attorney General in May 2006, which transferred authority over adjustment of status applications for arriving aliens from the IJ to the Department of Homeland Security. *See* 8 C.F.R. §§ 1245.2(a)(1) & 245.2(a)(1) (2006).

### III.

Blanco lastly argues that the BIA erred when it denied his request for a remand based on ineffective assistance of his prior counsel during his removal proceedings. We hold that Blanco has not shown that his counsel's performance violated due process and so we deny the petition as to this claim. *See Ortiz v. INS*, 179 F.3d 1148, 1153 (9th Cir. 1999).

Blanco asserts that his counsel was ineffective because she failed to move to reopen the record on the day of the IJ's oral decision, thereby preventing Blanco's witness and co-worker, Eric Jackson, from testifying in his behalf. Jackson, was traveling with Blanco when he attempted to re-enter the United States at the U.S.-Mexico border and presumably could have supported his testimony that he did not falsely claim U.S. citizenship. Blanco's counsel testified that she was not aware of Jackson's presence on the final day of the hearing until after the IJ finished his oral ruling. Blanco and Jackson admitted that Jackson showed up to testify only after the close of evidence, and after failing to show at two previous merits hearings, but insisted that Blanco's counsel knew of Jackson's presence before the IJ began to deliver his oral ruling. The BIA held that Blanco's "former counsel's actions involving her failure to present a witness after the evidentiary record has been closed . . . particularly when the witness at issue failed to appear at 2 prior hearings where the record remained open," did not amount to ineffective assistance of counsel.

**[9]** Individuals in immigration proceedings do not have Sixth Amendment rights, so ineffective assistance of counsel claims are analyzed under the Fifth Amendment's due process clause. *Lara-Torres v. Ashcroft*, 383 F.3d 968, 973 (9th Cir. 2004), *amended by* 404 F.3d 1105 (9th Cir. 2005). Ineffective assistance of counsel in a removal proceeding is a denial of due process if the proceeding "was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Mohammed v. Gonzales*, 400 F.3d 785, 793 (9th Cir.

2005) (quoting *Lopez v. INS*, 775 F.2d 1015, 1017 (9th Cir. 1985)). Blanco must also show that he was prejudiced by his counsel's ineffective performance. *See id.*; *see also Grigoryan v. Mukasey*, No. 05-77020, ___ F.3d ___, 2008 WL 307455, at *3 (9th Cir. Feb. 5, 2008) (per curiam).

[10] We conclude that the BIA did not err, because Blanco has not shown that his counsel's performance denied him the "right to a full and fair hearing." *Lin v. Ashcroft*, 377 F.3d 1014, 1027 (9th Cir. 2004). The record as a whole shows that Blanco's counsel diligently examined and cross-examined witnesses, argued points of law before the IJ and informed Blanco of his right to appeal. Further, counsel's performance, even if ineffective, was not "so inadequate that it may have affected the outcome of proceedings." *Iturribarria v. INS*, 321 F.3d 889, 899-900 (9th Cir. 2003) (internal quotation marks omitted). Given that the testimony and written records of several Border Patrol officers, as well as Blanco's own sworn statement, contradicted his testimony regarding the false claim of U.S. citizenship, the testimony of a co-worker as a supporting witness would not likely have led the IJ to reach a different outcome.

## CONCLUSION

Because the BIA erred when it held that Blanco's conviction under California Penal Code § 148.9(a) precluded him from consideration for cancellation of removal, we **GRANT** the petition in relevant part and **REMAND** so that the BIA may determine whether Blanco should be afforded any discretionary relief. We **DENY** the petition as to Blanco's other claims.

**GRANTED IN PART, DENIED IN PART AND REMANDED.**

Each party shall bear its own costs on appeal.

PREGERSON, Circuit Judge, specially concurring:

I concur with the holding that a violation of California Penal Code § 148.9(a) is not a crime of moral turpitude.