Filed 6/26/14  P. v. Torossian CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTRANIK TOROSSIAN,<br><br>    Defendant and Appellant. | D064395<br><br><br>(Super. Ct. No. SCE328101) |

APPEAL from a judgment of the Superior Court of San Diego County, William J. McGrath, Jr., Judge.  Affirmed.

Avatar Legal and Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

A jury convicted defendant Antranik Torossian of one count of burglary and two counts of false personation stemming from an incident in which Torossian held himself out as being one of his roommates at a car dealership. On appeal, Torossian contends that his conviction for burglary should be reversed on the ground that there is insufficient evidence to support the finding that he entered the dealership with the intent to commit a felony.

At trial, the prosecutor relied on Torossian's intent to commit false personation as the felonious intent underlying the burglary charge. False personation is a "wobbler" offense, which means that it can be charged as either a felony or misdemeanor. According to Torossian, the trial court implicitly rendered his conviction for false personation a misdemeanor conviction, rather than a felony, when the court suspended imposition of sentence. Torossian also argues that the facts demonstrate that the conduct underlying his false personation conviction constitutes misdemeanor conduct as a matter of law. Torossian contends that his intent to commit false personation thus fails to satisfy the element of felonious intent that is necessary for a burglary conviction.

We conclude that Torossian's contentions are without merit, and affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Factual background*

In January 2013, Ernesto Guevarra lived with his sister and Torossian, her boyfriend, in El Cajon, California.   Guevarra and Torossian considered each other to be brothers-in-law.  Two other men, Phillip Mendes and Ric Smith, also lived with Guevarra, his sister, and Torossian.

At the time of the events underlying the offenses charged in this case, Guevarra owned a 2012 Volkswagon Passat.  The vehicle was driven primarily by Torossian. Torossian had negotiated the purchase of the Volkswagon in Guevarra's name, while Guevarra was present.  Torossian generally made the payments on the Volkswagon. However, Guevarra made three payments when Torossian was unable to make those payments.  Guevarra typically drove a 2008 Jeep Patriot.  He was unable to drive the Volkswagon because it had a manual transmission.  Guevarra and Torossian agreed that they would trade in the Volkswagon for a car that Guevarra could drive, i.e., one that had an automatic transmission.  Guevarra agreed that the transaction would be done in his name because Torossian was "on [S]ocial [S]ecurity" and his credit score was not high enough to enable him to buy a car.  Guevarra wanted to trade in the 2012 Volkswagon Passat for a diesel Volkswagon or a Toyota Prius, in order to get better fuel efficiency on his daily commute.  Guevarra told Torossian this.  Guevarra knew that Torossian had Guevarra's personal information and intended to use it when negotiating a trade in at the

3

car dealership. However, Guevarra expected to be present at the dealership with Torossian during the negotiations, and to assist in the purchase of a new car.

Mendes had also spoken with Guevarra about purchasing a car together. Guevarra had given Mendes permission to use Guevarra as a coapplicant to buy a new car if Mendes's credit turned out to be insufficient. However, Guevarra did not give Torossian permission to use Guevarra's information to help Mendes purchase a car.

On February 13, 2013, Torossian went to a Mitsubishi dealership in El Cajon. Abraham Malfavon, a sales consultant, met with Torossian and asked him to provide information about himself, including his name and address. The dealership required a credit check before it would allow Torossian to test drive a car. Malfavon obtained information from Torossian, input the information onto a computerized registration form, printed out the form, and had Torossian sign the form. Torossian identified himself to Malfavon as Ernesto Guevarra. Malfavon forgot to ask Torossian for a driver's license. Based on the information that Torossian provided to Malfavon, which was information pertaining to Guevara, the general manager at the dealership ran a credit check on "Ernesto Guevarra." Guevarra was approved for credit.

Malfavon showed Torossian two cars. Torossian drove both cars and mentioned that he wanted to trade in his current car. Torossian gave Malfavon the vehicle registration card for a Volkswagon Passat, registered in the name of Ernesto Guevarra. Torossian apparently decided that he wanted to purchase a Mitsubishi Lancer GT. The Lancer GT that Torossian was considering had a manual transmission. Malfavon sent

4

Torossian to speak with Joe Raymond, the sales manager, who negotiated with Torossian regarding the price of the car.

After Torossian and Raymond reached agreement on a price, Malfavon assisted Torossian with a credit application. Malfavon asked Torossian for the required information, and completed the credit application form. Torossian printed a name and signed the application. He also filled out a form that required six personal references.

At that point, Malfavon asked Torossian for his driver's license. Rather than provide a driver's license, Torossian provided Malfavon with a driver's license number. The finance director at the dealership checked the validity of the driver's license number that Torossian had provided by using the dealership's computer system to obtain information from the Department of Motor Vehicles. The finance director determined that the license number was invalid, and that no such number had been issued by the Department of Motor Vehicles. Upon being told that the license number he had provided was invalid, Torossian said that he would return to the dealership later because he could not find his driver's license. Torossian was unable to purchase a car that day without a valid driver's license to verify his identity.

Malfavon waited two or three days before calling Torossian at the number that Torossian had provided during his visit to the dealership. Torossian answered Malfavon's call and told Malfavon that he would return to the dealership.

On February 16, 2013, Torossian returned to the Mitsubishi dealership, this time accompanied by Mendes. Mendes provided his own driver's license to register with the

dealership, and asked to look at a Lancer GT. Mendes also provided his personal information on the dealership's registration form and signed the form. After viewing the Lancer GT, Mendes decided that he wanted to purchase a Lancer GT. The Lancer GT that Mendes was shown had a manual transmission. Mendes negotiated a price for the car with Raymond, the sales manager. Torossian was present during the discussions and participated in the negotiations.

After Mendes, Torossian and Raymond agreed on a price for the Lancer GT, Malfavon helped Mendes complete a credit application. Malfavon obtained information from both Mendes and Torossian, as a coapplicant, for credit to purchase the car. Instead of providing his own personal information, Torossian provided Guevarra's information for the coapplication portion of the application. Mendes and Torossian both signed the credit application. After Malfavon obtained additional information from Mendes, including Mendes's driver's license number and insurance information, Malfavon asked for Torossian's driver's license. Rather than provide a driver's license, Torossian provided a driver's license number. The driver's license number that Torossian provided on this occasion was different from the one that he had provided on his previous visit to the dealership. Torossian also showed Malfavon a California Department of Social Service Community Licensing Division form, which was in Ernesto Guevarra's name, to attempt to establish that the driver's license number that he had provided was valid. This time, when someone at the dealership attempted to verify the driver's license number, the driver's license number proved to be valid. However, the dealership would not permit

6

Mendes and Torossian to purchase a vehicle without having some form of photographic identification from Torossian. Mendes and Torossian left the dealership, saying that they would return in 30 minutes.

A few hours later, when Mendes and Torossian had not returned to the dealership, Malfavon called the number that Torossian had given him to inquire whether Torossian had obtained his photographic identification. According to Malfavon, the person who answered the telephone did not sound like Torossian. Although Malfavon did not think that the person on the other end of the telephone was Torossian, Malfavon requested that the person come to the Mitsubishi dealership.

Guevarra testified that he is the person who answered the telephone call from Malfavon. Malfavon told Guevarra that his credit had been approved for trading in his car for a new vehicle. Guevarra was upset because he had not agreed to trade in his Volkswagon for a Mitsubishi. Guevarra told Malfavon that he had not been to the dealership.

After Malfavon got off the telephone with Guevarra, he asked Raymond to call the number that he thought he had dialed, to make sure he had dialed correctly. No one answered the call when Raymond dialed the number.

Torossian arrived at the dealership, alone, sometime after Malfavon's telephone call to the number that Torossian had provided. The finance director at the dealership called the police.

7

El Cajon Police Officer Melissa Calderon was dispatched to the dealership to investigate a claim that someone was using another person's identification to try to purchase a vehicle. After arriving at the dealership, Calderon spoke with Torossian. She asked him for his identification. Torossian gave Calderon his own California driver's license, which reflected his real name, Antranik Torossian. The dealership provided Calderon with documents bearing Ernesto Guevarra's and Philip Mendes's information.

In the meantime, Guevarra received a call from Torossian asking him to come to the dealership. Guevarra drove to the dealership, accompanied by Mendes and Smith. Officer Calderon was there when Guevarra arrived. Calderon confirmed with Guevarra that the information on the car purchasing documents was Guevarra's information.

At trial, Guevarra testified that he learned about the credit application that Torossian had completed in Guevarro's name from the dealership. He also testified that he had never given the dealership permission to run a credit check on him.

B.    *Procedural background*

The San Diego County District Attorney charged Torossian with two counts of false personation (Pen. Code, § 529; counts 1 and 3),[1] two counts of burglary (§ 459; counts 2 and 4), and one count of attempted grand theft of personal property (§ 487, subd. (a); count 5). Counts 1 and 2 were alleged to have occurred on February 13, 2013. Counts 3 and 4 were alleged to have occurred on February 16, 2013. Count 5 was alleged to have occurred between February 13 and February 16, 2013.

---

[1]    All statutory references are to the Penal Code unless otherwise specified.

The trial court dismissed count 5 for insufficient evidence. The following day, a jury found Torossian guilty on counts 1, 3, and 4. The jury found him not guilty on count 2.

At sentencing, the trial court suspended imposition of sentence and ordered Torossian to serve three years of probation with 45 days to be served in local custody. Torossian filed a timely notice of appeal.

III.

DISCUSSION

Torossian contends that his conviction on count 4, for burglary, should be reversed for insufficient evidence. According to Torossian, the trial court implicitly determined that his convictions for false personation—a "wobbler" offense that can be either a felony or a misdemeanor—were misdemeanors for all purposes because the court suspended imposition of sentence. Torossian also contends that the facts establish that the conduct underlying the false personation counts was misdemeanor conduct as a matter of law, and did not amount to felony conduct. He maintains that since the prosecutor argued to the jury that the underlying intent to commit a felony to support Torossian's burglary conviction was his intent to commit false personation, and his commission of false personation was, according to Torossian, legally and factually a misdemeanor, there is no felonious intent to support his burglary conviction.

9

A.	*Additional background*

The prosecutor charged Torossian with felony false personation (§ 529, subd. (a)(3)) and felony burglary (§ 459). The trial court instructed the jury with respect to the offense of burglary as follows: "To prove that the defendant is guilty of the crime of burglary, the People must prove two things. No. 1, the defendant entered a building; and No. 2, when he entered a building, he intended to commit a felony, false []personation."

The prosecutor argued that "the second element is that when [Torossian] entered a building, he intended to commit a felony. And here in this case it's false []personation."

The jury found Torossian guilty of both counts of false personation, and one count of burglary.

B.	*Analysis*

There is sufficient evidence to support Torossian's conviction for burglary. The record does not support Torossian's contention that his commission of false personation was legally and factually a misdemeanor.

Burglary is the entry into any building with the intent to commit larceny or any felony therein. (*People v. Yarbrough* (2012) 54 Cal.4th 889, 892.) A defendant "may be liable for burglary upon entry with the requisite intent to commit a felony," whether or not the defendant actually commits a felony. (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041-1042.)

"The Legislature has classified most crimes as *either* a felony or a misdemeanor, by explicitly labeling the crime as such, or by the punishment prescribed." (*People v.*

*Park* (2013) 56 Cal.4th 782, 789 (*Park*).)  However, there is a special category of crimes that is punishable as either a felony or a misdemeanor.  These crimes, which are referred to as "wobblers," are "punishable either by a term in state prison or by imprisonment in county jail and/or by a fine." (*Ibid.*)  The offense of false personation is a wobbler, since it may be punished as either a felony or as a misdemeanor.  (*People v. Rathert* (2000) 24 Cal.4th 200, 208.)

" 'A wobbler offense charged as a felony is regarded as a felony for all purposes until imposition of sentence or judgment.  [Citations.]  If state prison is imposed, the offense remains a felony; if a misdemeanor sentence is imposed, the offense is thereafter deemed a misdemeanor.  [Citations.]' " (*People v. Upsher* (2007) 155 Cal.App.4th 1311, 1320.)  Thus, when a factfinder has determined that a defendant is guilty of a wobbler offense that was charged as a felony (or when a defendant has pled guilty or no contest to such an offense), the trial court has discretion, pursuant to the procedures set forth in section 17, subdivision (b), to determine the nature of the conviction.  (See *Park*, *supra*, 56 Cal.4th at p. 790.)  Subdivision (b)(3) of section 17 provides that a wobbler is a misdemeanor when, among other things, "the court grants probation to a defendant without imposition of sentence *and at the time of granting probation*, *or on application of the defendant* or probation officer thereafter, *the court declares the offense to be a misdemeanor*." (Italics added.)  Section 17, subdivision (b)(3) gives the trial court the discretion to "reduce a wobbler to a misdemeanor either by declaring the crime a misdemeanor at the time probation is granted or at a later time—for example when the

11

defendant has successfully completed probation." (*Park*, *supra*, at p. 793.) Prior to this procedure being made available to courts through a 1963 amendment to the statute, a wobbler could be deemed a misdemeanor only when a court actually imposed a sentence other than commitment to state prison. (*Id*. at pp. 791-793.) Currently, however, under section 17, subdivision (b)(3), a court may simply *declare* an offense to be a misdemeanor, even if it chooses to stay imposition of sentence because it is granting the defendant probation.

The trial court did *not declare* Torossian's wobbler to be a misdemeanor when it stayed imposition of Torossian's sentence. Thus, Torossian's conviction for false personation remains a felony. (See *Park*, *supra*, 56 Cal.4th at p. 793 ["[O]nly when the court takes affirmative steps to classify the crime as a misdemeanor" does it become a misdemeanor for all purposes].) Torossian is therefore incorrect when he suggests that the false personation offense underlying his burglary offense is legally a misdemeanor because the trial court implicitly determined it to be a misdemeanor by suspending imposition of sentence.

Torossian's contention that "the false personation intended did not rise to the level of felony false personation and was rather misdemeanor conduct" is also misguided. According to Torossian, the "facts elicited at trial can only support a finding that the conduct intended was misdemeanor false personation because while appellant technically violated section 529, he did so only for convenience and not with any criminal intent." Torossian also urges that his "false personation was not done to defraud or harm anyone,

12

rather it allowed him to do actions which were perfectly legal, namely test driving a vehicle and applying for credit in the name of the person who would actually take title to the car."

Torossian admits, however, that he violated the terms of the law. False personation does not require an intent to harm another, so the absence of an intent on Torossian's part to harm anyone is irrelevant for purposes of the offense of determining whether an incident of false personation constitutes a felony or a misdemeanor. Further, the evidence establishes that Torossian's presenting himself as Guevarra at the dealership did defraud the dealership in that doing so enabled him to test drive a car, which, because of his bad credit, the dealership would not have permitted him to do had he been honest about his identity.

There are valid policy reasons for prohibiting an individual from pretending to be someone else in order to obtain credit in the other person's name, even if the individual in question does not intend to harm the other person. Torossian's attempt to downplay the nature of his conduct in this situation is unavailing. While Torossian's conduct in holding himself out as Guevarra under all of the circumstances in this case is certainly not the most egregious example of false personation, we cannot say that Torossian's conduct at the dealership constituted only misdemeanor conduct as a matter of law, and did not rise

to the level of felony conduct.[2]  Torossian's argument that he intended to commit only misdemeanor false personation, both legally and factually, is without merit.

Even if we were to assume that the trial court had in fact declared that Torossian's false personation offense was a misdemeanor and not a felony offense, this would not entitle Torossian to a reversal of his burglary conviction.  The instructions required the jury to find that Torossian entered the dealership with the felonious intent to commit false personation.  A felony is defined as "a crime that *is punishable* with death [or] by imprisonment in the state prison."  (§ 17, subd. (a), italics added.)  False personation is an offense that is punishable by imprisonment in the state prison.  The jury's finding that Torossian entered the dealership with the intent to commit false personation constitutes a determination that he entered the dealership with the intent to a commit a crime that is punishable by imprisonment in the state prison—i.e., a felony.  The fact that the trial court might, at a later date, declare Torossian's wobbler offense to be a misdemeanor does not undermine the jury's finding that he entered a building with the intent to commit a felony: "If ultimately a misdemeanor sentence is imposed [i.e., if the wobbler is ultimately determined to be a misdemeanor offense], the offense is a misdemeanor from that point on, but *not retroactively . . . .*" (*People v. Feyrer* (2010) 48 Cal.4th 426, 439,

---

[2]     We stress that we are not determining that Torossian's conviction for false personation must remain a felony conviction.  If Torossian completes his probation in a satisfactory manner, the trial court may reduce his offense to a misdemeanor at that time.  However, as of the time of sentencing, the trial court had not reduced Torossian's offense to a misdemeanor, and we cannot say that, as a matter of law, the facts establish that the offense was necessarily a misdemeanor offense.

italics added.)  We see no reason why the same rule should not apply if the trial court were to ultimately *declare* the offense to be a misdemeanor, pursuant to subdivision (b)(3) of section 17.

## IV.

## DISPOSITION

The judgment of the trial court is affirmed.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.

15