**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

LEONOR FERNANDA LOPEZ-
HURTADO,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney
General,

Respondent.

No.   14-72744

Agency No. A093-298-035

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 13, 2017
San Francisco, California

Before:  WARDLAW and GOULD, Circuit Judges, and HUFF,[**] District Judge.

Leonor Lopez-Hurtado ("Lopez"), a native and citizen of Mexico, petitions

for review of the Board of Immigration Appeals' ("BIA") dismissal of her appeal

of the Immigration Judge's ("IJ") denial of her petition for cancellation of removal

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Marilyn L. Huff, United States District Judge for the
Southern District of California, sitting by designation.

on the ground that Lopez had been convicted of a crime involving moral turpitude ("CIMT"). We have jurisdiction pursuant to 8 U.S.C. § 1252. *See Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1140–41 (9th Cir. 2002). "The BIA conducted its own review of the evidence and law rather than simply adopting the immigration judge's decision. Accordingly, our review is limited to the BIA's decision . . . ." *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006) (internal quotation mark omitted). We grant the petition and remand to the BIA for further proceedings consistent with this disposition.

1.      Because the BIA has expertise in determining whether a statute categorically constitutes a CIMT, "we defer to its conclusion if warranted, . . . following the *Skidmore* framework if the decision is unpublished (and not directly controlled by any published decision interpreting the same statute)." *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1208 (9th Cir. 2013) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)). "The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140. The BIA determined that Nevada Revised Statute § 483.530(2) matches the generic federal CIMT because "the full range of conduct

encompassed by that statute is 'inherently fraudulent,' that is, it involves the making of a knowingly false statement in order to gain a specific benefit which the offender deems valuable, i.e., a driver's license or identification card."  The BIA decision "discern[ed] no 'realistic probability' that Nevada would apply § 483.530(2) to prosecute non-turpitudinous conduct."  Though the BIA correctly articulated the applicable legal standard for finding a categorical CIMT, it did not analogize to any relevant agency or circuit precedent interpreting a similar statute or otherwise conduct its analysis with particular thoroughness.  Thus, the BIA decision's "power to persuade" is limited.

2.    "[T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute . . . requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime."  *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).  While "[o]ne way a petitioner can show the requisite 'realistic probability' of prosecution for conduct that falls outside the generic definition is to point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues," we have also held that "when a state statute's greater breadth is evident from its text, a petitioner need not point to an actual case applying the statute of conviction in a

3

nongeneric manner." *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1009–10 (9th Cir. 2015) (internal quotation marks omitted). "[W]here, as here, the state statute plainly and specifically criminalizes conduct outside the contours of the federal definition, we do not engage in judicial prestidigitation by concluding that the statute creates a crime outside the generic definition of a listed crime." *Cerezo v. Mukasey*, 512 F.3d 1163, 1167 (9th Cir. 2008) (internal quotation marks omitted).

An offense constitutes a generic federal CIMT "if intent to defraud is either explicit in the statutory definition of the crime or implicit in the nature of the crime." *Blanco v. Mukasey*, 518 F.3d 714, 719 (9th Cir. 2008) (internal quotation marks omitted). "[K]nowing misrepresentation" is not itself fraudulent. *Id.* To be fraudulent, a criminal act must require the "evil intent" to "make[] false statements in order to procure" something "tangible"; to "attempt to induce another to act to his or her detriment"; or to "induce reliance." *Id.* In short, intent to defraud requires both (a) that a defendant knowingly or intentionally make a false statement and (b) that the false information be material to the procurement of a benefit or something of value. The felony offense defined in § 483.530(2) provides, "[A] person who uses a false or fictitious name in any application for a driver's license or identification card or who knowingly makes a false statement or

4

knowingly conceals a material fact or otherwise commits a fraud in any such application is guilty of a category E felony . . . ."

Subsection (2) is facially overbroad compared to the generic CIMT. Conviction does not expressly require fraudulent intent. *See Blanco*, 518 F.3d at 719. Moreover, given the breadth of the statutory language, fraudulent intent is also not "implicit in the nature of the crime." *Id.* There are myriad ways a defendant could commit the felony described in § 483.530(2) without intending to defraud. For instance, the provision expressly makes it a felony knowingly to make a false statement in a driver's license application. Knowing misrepresentation alone, however, is not intent to defraud. *See id.* Only facts that go to the identity of the applicant—such as name or Social Security number—would be material to the issuance of a license such that the misrepresentation was necessarily done with the intent to procure the license. *Cf. Maslenjak v. United States*, 137 S. Ct. 1918, 1924 (2017) (noting that a false statement is not "material" if it does not "influence the decision to approve" an application). An applicant might falsify certain personal identifying information without intending that these misrepresentations *result in* procurement of the identification, as those false statements would have no effect on whether the license would issue. Because § 483.5430(2) "plainly and specifically criminalizes

5

conduct outside the contours of the federal definition," *Cerezo*, 512 F.3d at 1167, we conclude that it is overbroad compared to the federal generic definition of a CIMT. The BIA therefore erred in concluding that Lopez had been convicted of a categorical CIMT, and the agency instead should have proceeded to an inquiry of whether the felony offense in subsection (2) is divisible. *See Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016); *Descamps v. United States*, 133 S. Ct. 2276, 2281–82 (2013).

**GRANTED; REMANDED.**